Argued January 7 on record and brief, affirmed
January 28, 1971

STATE OF OREGON, *Respondent, v.*
DOUGLAS EARL JONES, JR., *Appellant.*

479 P2d 1020

Ronald L. Salter, Ashland, for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, for respondent. With him on the briefs were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

## THORNTON, J.

Defendant was indicted for the crime of being a convicted felon in possession of a concealable firearm (ORS 166.270).[1] He waived jury trial, was tried by the court and found guilty as charged. He appeals from this conviction, citing as error the following:

(1) "The trial court erred in overruling the motion to suppress evidence because the search that resulted in the finding of such evidence [the firearm] was unreasonable.

(2) "The trial court erred in finding the defendant guilty since there was a lack of proof that he had been convicted of a felony. * * * A felony is a crime which is punishable by imprisonment in the penitentiary of this state and the prosecution to the contrary proved only that the defendant had been convicted of a crime punishable by imprisonment in the penitentiary in the state of Idaho."

The essential facts as disclosed by the record are as follows: Defendant, at the time of his arrest, was in the apartment of Peggy Lynn Myers. Previously he had been convicted of the crime of forgery in Idaho and sentenced to the state penitentiary for five years.

---

[1] ORS 166.270 provides:

"Any unnaturalized foreign-born person or any person who has been convicted of a felony against the person or property of another or against the Government of the United States or of this state, or of any political subdivision of this state, who owns, or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person, or machine gun, shall be punished upon conviction by imprisonment in the penitentiary for not more than five years."

On the date in question Officer Stedman (of the Medford Police Department) went to Mrs. Myers' apartment to arrest her on a warrant charging her with furnishing liquor to a minor. Mrs. Myers answered the door. Stedman asked if she was Peggy Myers. She replied that she was. He then showed her the warrant, advising her that he had a warrant for her arrest for furnishing liquor to a minor. At this point in their conversation the officer entered the living room of the apartment, informing Mrs. Myers that he was taking her to jail, and that it would be necessary for her two children to be "taken care of by the Welfare Agency." As he entered the apartment he saw the children. Thereupon Mrs. Myers categorically refused to allow the removal of the children from the apartment. The officer then asked her if there was anyone else in the house. She replied that the defendant was in the bedroom. He asked if he could talk to the defendant. Mrs. Myers replied that he was asleep.

At that moment a voice came from the bedroom, saying, "I'll talk to them." Subsequent events are best understood by quoting directly from Stedman's testimony at the trial.

"A [Stedman] * * * I proceeded in the bedroom with Mrs. Meyers, and at that time observed Douglas Earl Jones [defendant] seated on the edge of the bed.

"Q [District Attorney] What happened then?

"A I identified myself showing my badge and he indicated he knew I was a Police Officer. As he started toward me so we could go back out in the front room I observed a twenty-five automatic pistol on the dresser along the doorway in the bedroom.

"Q What happened after that?

"A I interjected myself into the position be-

tween Mr. Jones and the weapon where the weapon would be behind as he passed by me and he went out in the hallway. At this time I picked the weapon up and Mr. Jones advised me, without prompting, 'I had nothing to worry about, the weapon was empty.'

"Q What happened then?

"A I told him I became nervous when guns were around and I made an arrest and he would have to excuse me. I then asked who the weapon belonged to and he indicated that it was his, and as I picked it up and we proceeded down the hallway toward the living room I asked him if he hadn't just recently been released from the State Penitentiary in Idaho, he indicated that he had. I said, 'Wasn't that a felony,' and he said, 'Yes.' I said, 'What was the charge,' and he said, 'Forgery.' I then advised him that he was under arrest for being an ex-felon in possession of a concealed firearm. That was after the second time I asked if that was his weapon. That question might not have been in that order but that was the question that was asked.

"Q Did you arrest him at that time?

"A I did."

■ Taking up the first assignment of error, namely, the alleged unreasonable search and seizure, we are at a loss to find any basis for defendant's claim that the officer acted illegally in seizing the weapon. The evidence is uncontroverted that the defendant volunteered to talk to the officer; that the latter was lawfully in the bedroom; that the weapon was lying atop of the dresser in plain view of anyone entering the bedroom; that the officer did not engage in any "search"; and that defendant readily admitted ownership of the weapon.[2]

---

[2] No issue is raised in this appeal of whether or not the of-

As we stated in *State v. Robbins*, 91 Adv Sh 475, 3 Or App 472, 474 P2d 772 (1970):
> "* * * Evidence of a crime in plain view from a place where an officer is entitled to be is subject to seizure. *State v. Brown*, 1 Or App 327, 461 P2d 836 (1969); *State v. Johnson*, 232 Or 118, 374 P2d 481 (1962). * * *"

The same rule is set forth in *Harris v. United States*, 390 US 234, 88 S Ct 992, 19 L Ed 2d 1067 (1968), in practically the identical language.

*Chimel v. California*, 395 US 752, 89 S Ct 2034, 23 L Ed 2d 685 (1969), relied upon by defendant, has no application here. There, the officers, after arresting defendant at his home for burglary of a coin shop, conducted a 45-minute search of his entire three bedroom home, including the attic, garage, small workshop and various drawers. They seized numerous coins which were admitted into evidence at the trial. The above facts bear no resemblance to the facts of the present case.

We now take up the second assignment of error. The defendant admits that he had previously been convicted of a "crime punishable by imprisonment in the penitentiary in the state of Idaho" but contends that since he was not convicted of a felony committed in the state of Oregon the court erred in convicting him. He points to the statutory definition of a felony in Oregon (ORS 161.030)[9] and argues that

---

ficer's questions should have been preceded by advice to the defendant of his rights. Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

[9] ORS 161.030 provides:
"(1) Crimes are divided into felonies and misdemeanors.
"(2) A felony is a crime which is punishable by imprison-

criminal laws are to be strictly construed and that a person who has been convicted of a felony in another state and found in possession of a concealable firearm in this state is not within the terms of ORS 166.270.

■ The common law rule of strict construction of criminal statutes is not applicable in this state; having been expressly abrogated by ORS 161.050. *State v. Anthony*, 179 Or 282, 299, 169 P2d 587 (1946), *cert denied* 330 US 826, 67 S Ct 865, 91 L Ed 1276 (1947); *State v. Dunn*, 53 Or 304, 308, 99 P 278, 100 P 258 (1909).

■ The sole object of ORS 166.270, as indicated by the title of the original enactment (Oregon Laws 1925, ch 260), is to "control the possession, sale and use of pistols and revolvers * * *" in this state, and particularly to prohibit possession of concealable firearms by aliens and convicted felons.

The statute by its terms is not limited in its application to persons convicted in this state. Defendant has cited no decision in support of his contention nor have we discovered any.

Although this question apparently has never been squarely passed upon by this court or the Oregon Supreme Court, the Supreme Court, in at least three instances, has upheld convictions under or involving ORS 166.270 (but on other issues), where the prior

ment in the penitentiary of this state. When a crime punishable by imprisonment in the penitentiary is also punishable by a fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes, after a judgment imposing a punishment other than imprisonment in the penitentiary or in the Oregon State Correctional Institution.

"(3) Every crime not included in subsection (2) of this section is a misdemeanor."

felony conviction(s) occurred in another state or other states, see *State v. Cory*, 204 Or 235, 282 P2d 1054 (1955); *Bailleaux v. Gladden*, 230 Or 606, 370 P2d 722 (1962); *State v. Anderson*, 241 Or 18, 403 P2d 778 (1965).

A similar rule obtains in applying the so-called habitual criminal statutes of this and other states, where prior convictions obtained against a defendant in other jurisdictions may be used to enhance the penalty provided in the sentencing state. *State v. Glenn*, 245 Or 70, 420 P2d 60 (1966); 39 Am Jur 2d 321, Habitual Criminals, etc. § 16.

The judgment below is therefore affirmed.