Argued December 3, 1971, affirmed January 6, 1972

## STATE OF OREGON, *Respondent, v.* JOHN PAUL McGEE (No. 27627), *Appellant.*

492 P2d 489

*Rollin B. Wood,* McMinnville, argued the cause and filed the briefs for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

Defendant was convicted upon jury trial of illegal possession of narcotics in violation of ORS 474.020. He appeals assigning as error (1) denial of his pretrial motion to suppress marihuana and a brass smoking pipe seized by the police at the time of his arrest and (2) failure to sustain his objection to the introduction of the above items into evidence at trial.

This prosecution developed out of a quarrel between a landlord and his tenants over payment for some broken windows in the dwelling house. The tenants were defendant, his fiancee and another young couple. The landlord, who was the stepfather of defendant's fiancee, had originally given his stepdaughter permission to occupy the empty house. She apparently invited the others to move in. The testimony indicates that the stepfather later gave qualified consent to the occupancy by the others if the two young men would do certain work around the property.

On the day in question the stepfather came in

the house seeking payment for the broken windows. An angry exchange followed. When payment was refused the stepfather decided to effect payment by seizing and carrying off a stereo phonograph in the room. Defendant's fiancee then got a pistol, pointed it at her stepfather and ordered him to " 'Get out of here.' " The stepfather put down the stereo and left the premises. Immediately thereafter he complained to the sheriff's department that "a bunch of hippies had moved into one of his houses and broken out the windows, and, upon trying to remove them, a gun was pointed at him." When the officers arrived at the house, defendant, the stepdaughter and a visitor named Stoddard were on the front porch. Officer Oden asked defendant, "Where is the gun?" Defendant replied, "Upstairs," and offered to take him to where the gun was. Officers Oden and Mahlman followed defendant into the house and upstairs. Defendant had hidden the gun under the mattress after the earlier incident. Defendant handed the gun to Officer Oden. The officer, noticing that the clip was missing, asked where it was. Defendant said he had removed it and put it into a coat pocket in the closet. As he followed defendant to the closet, the officer happened to observe a vial containing a green vegetable matter lying in a partly opened dresser drawer. He removed the vial, believing the contents to be marihuana. Officer Oden asked Officer Mahlman to remain with defendant while he went downstairs to talk with Officer Eide, who meanwhile had come into the house and was sitting in the living room talking with Stoddard. While talking with Stoddard, Officer Eide detected the odor of marihuana smoke in the room. Both officers observed some loose particles of vegetable matter, which they believed to be marihuana, sprinkled on top of a coffee table in

the same room. Officers Oden and Eide then went outside to talk over the situation.

After conferring, the officers requested the stepdaughter to allow them to make a complete search of the house. She gave oral consent and the officers then conducted a general exploratory search of the entire house. Officer Eide seized the marihuana which he had previously observed sprinkled on top of the coffee table and placed it in a match box for safekeeping. Certain other items were seized, none of which was introduced in evidence at trial. However, shortly thereafter one of the officers did seize a belt and brass belt buckle in the form of a smoking pipe being worn by defendant. The bowl of the pipe contained a black residue of what appeared to be marihuana. The officer, on experience, recognized the pipe as one commonly used for smoking marihuana.

Defendant contends the officers had no authority to enter the house without express permission, relying principally on *Chimel v. California,* 395 US 752, 89 S Ct 2034, 23 L Ed 2d 685 (1969). He further contends that the two seizures of marihuana and the seizure of the pipe were illegal, relying chiefly on *State v. Parks, State v. Tarpley, Jr.,* 5 Or App 601, 603-604, 485 P2d 1246 (1971).

■ Cases relied upon by defendant, including *Chimel* and *Parks,* are not applicable. Here there was evidence from which the trial judge could and did find at the hearing on defendant's motion to suppress that the officers were lawfully on the premises investigating the gun-pointing incident; that they had a reasonable basis for suspecting that a felony, namely assault with a dangerous weapon, had been committed; that they knew of the presence of the gun in the house and the

alleged assault against the landlord shortly before; that defendant offered to take Officer Oden to where the gun was located. Defendant having offered to take the officer to where the weapon was located cannot now contend that the officer had no authority to enter the house. *See State v. Jones,* 4 Or App 447, 479 P2d 1020 (1971); *State v. Hinsvark,* 3 Or App 195, 471 P2d 859, Sup Ct *review denied* (1970).

■ Next, the items seized here were all in plain view and were observed while the officers were in a position where they were entitled to be. The seizure without a warrant was lawful. *State v. Jones,* supra at 450-51. Unlike *Chimel,* the officers did not engage in any exploratory search until some time later, after defendant's fiancee had given them permission.

■ As to the brass pipe, the evidence was that the officers had already found marihuana in two places within the dwelling and had smelled marihuana smoke prior to the time when one of them recognized the brass pipe with the black residue in its bowl on defendant's belt buckle. These additional facts clearly distinguish the case at bar from *State v. Parks,* supra, where the officers observed only a hashish pipe festooned with beads on the seat of an automobile.

We conclude that the trial court did not err in denying defendant's motion to suppress and in receiving the two containers of marihuana and the brass pipe into evidence.

Affirmed.