Argued July 19, 1971, re-argued January 17, affirmed March 23, petition for rehearing denied April 18, petition for review denied June 20, 1972

## STATE OF OREGON, *Respondent, v.* RICHARD LOREN ALEXANDER (No. C-57570), *Appellant.*

495 P2d 51

*William C. Snouffer,* Portland, argued the cause for appellant. With him on the brief were Lindsay, Nahstoll, Hart, Duncan, Dafoe & Krause, Portland.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

FOLEY, J.
Defendant was convicted of the crime of posses-

sion of marihuana. On appeal he claims that the evidence seized from his apartment and admitted into evidence against him should have been suppressed.

The relevant seizure occurred on December 12, 1969, when police officers went to defendant's apartment to execute a warrant for his arrest on a separate charge of selling dangerous drugs. The police did not have a warrant to search the apartment.

The defendant argues that under a proper definition of the term, the evidence seized was not in plain view, and even if in plain view, was nevertheless inadmissible because the officer's observations were really an "accusatory visual search" and on the further ground that the items seized were 12 to 15 feet away on the other side of a room divider, not under the immediate control of the defendant and thus not subject to seizure as incident to a valid arrest under *Chimel v. California,* 395 US 752, 89 S Ct 2034, 23 L Ed 2d 685 (1969). The state seeks to justify the seizure on the basis that it was incident to a valid arrest and that the evidence seized was in plain view at the time of the arrest.

A brief statement of the facts will help to explain our analysis of the problem. An undercover officer, Robert Koch, on October 8, 1969, had purchased methamphetamine from the defendant and an indictment had been returned against him approximately two months after the amphetamine purchase. Officer Koch and several other officers were in the process of serving some 60 arrest warrants which were the culmination of extensive undercover activity. Included in the warrants was one for the defendant. They had served the arrest warrants during the evening on more than 40 persons and around 3 a.m. on

December 12, 1969, they arrived at defendant's apartment. Koch and his companion officer, both dressed in civilian clothes, knocked. Officer Koch was recognized by defendant and he and his companion were invited inside by defendant who did not yet know they were police officers. No mention was made of the officers' ultimate purpose—to assist the other officers in effecting defendant's arrest. Officer Koch testified that as he walked across the room after being admitted he glanced through an opening in a room divider into the other part of the room toward a low table and after he sat on the sofa he turned and looked through a series of shelves at the low table again. He saw baggies of what he concluded to be marihuana. The distance was 12 to 15 feet. Whether the record supports his conclusion we discuss later in this opinion. Officer Koch and defendant talked about a variety of subjects for about eight minutes. Officer Koch did not immediately seize the baggies though he remained present in the room where the baggies were visible until they were seized. Through prearrangement the accompanying plainclothes officer was then sent from the apartment to alert several other officers. Thereafter they came into the apartment and served the arrest warrant upon the defendant. Officer Koch then directed one of the officers to the baggies which were seized by the officer. The trial court, after hearing the testimony, sustained the seizure "* * * based upon my finding that the marihuana was openly visible to Officer Koch, that at that time he could plainly see it * * *."

■ First, as to defendant's claim that this was an "accusatory visual search," we find this not to be a valid claim. Items which are in plain view under any common-sense application of the words do not necessarily become the subject of a search. "Plain view"

is defined to mean free of impediments to view and clearly or distinctly recognizable. It is not necessary to search for items which are thus directly in the line of sight and view and distinctly recognizable. Whether such items may be seized is another question which we will discuss later.

Second, we look to defendant's assertion that the seizure was invalid because even if incident to arrest the items were not within the immediate control of defendant and thus not subject to seizure under *Chimel v. California*, supra. We do not reach this question because we conclude that the seizure was not incident to an arrest. Officer Koch and his companion were still in their "drug culture" manner of dress and were invited into defendant's home by defendant. As far as defendant knew, these were not officers but his friends and he treated them and admitted them to his home as such. It was while they were in his house in this status, in the room to which they had been invited, that Officer Koch observed what he said he recognized as a baggie of marihuana.

■ ■ An officer who is in a place where he has a right to be may seize contraband which is in plain view without the necessity of a search warrant and without the necessity that the seizure be incident to an arrest. *See, e.g., Harris v. United States,* 390 US 234, 236, 88 S Ct 992, 19 L Ed 2d 1067 (1968); *State v. Johnson,* 232 Or 118, 374 P2d 481 (1962); *State v. Jones,* 1694-95, 4 Or App 447, 450-51, 479 P2d 1020 (1971). Although the actual seizure occurred after the other officers had entered the room, it was at Officer Koch's direction and was based upon the observation which he had made during his invited entry and during the period when he was in the room as defendant's invited

guest. There was no intrusion upon defendant's privacy during the time Officer Koch testified he observed the contraband. Contrary to the claims that *Coolidge v. New Hampshire*, 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971), condemns the seizure, we do not believe it governs in this case, where the relationship is that of guest-host, as distinguished from an intrusion upon privacy as with an arrest warrant or a search warrant.[①]

We come now to the question of whether the baggie was in plain view and, as such, recognized as marihuana by the officer.

The testimony of the officer on this point is ambiguous. At one point in his testimony the officer said:

"I have not at any time stated I was positive there was marijuana. * * * I had probable cause."

At another point, in answer to a question by the judge, he said:

"* * * Once I sat down and then took a good look at it, at this point I had in my mind more than a reasonable doubt that it was [marihuana]."

---

① The defendant urges that Coolidge v. New Hampshire, 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971), renders the seizure in this case unreasonable. *Coolidge* involved a previously planned, intentional, as distinguished from non-planned, seizure of evidence. It involved the seizure of evidence as distinguished from contraband.

In discussing the plain view doctrine and the prior justification for an *intrusion* upon defendant's privacy, the court said:

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an *intrusion* in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, *or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. * * *"* (Emphasis supplied.) 403 US at 466.

Cross-examination by defense counsel:

> "* * * Mr. Koch, you then said you were certain after you were seated on the sofa that the items were baggies containing what is usually, in your past experience, what usually would be a container of marijuana?
>
> "A [Mr. Koch]: I felt that I had sufficient probable cause as to think certainly this was beyond a reasonable doubt."

We believe a reasonable interpretation of the officer's testimony would be that he was convinced beyond a reasonable doubt it was marihuana that he saw.[2]

■■ It is basic that a witness who testifies to a fact which can be perceived by the senses must have had an opportunity to observe and must have actually observed the fact. McCormick, Evidence 19, § 10 (1954). Evidence of the witness's background, education, experience and training is relevant to assist the fact finder in making his assessment and appraisal of the witness's testimony. In connection with his training and experience, Officer Koch testified as follows:

> He was a graduate of the Miami Police Academy, Miami, Florida. He had one and one-half years' experience as a police officer in North Miami Beach, which included narcotics enforcement. He had special training in narcotics through the Federal Narcotics Bureau in the Miami Police Academy and 10 to 20 hours of classroom work specifically in narcotics, embracing the identification of the various narcotic drugs including marihuana. From August 1, 1969, to Decem-

---

[2] This interpretation is supported by one of defense counsel's succeeding questions when he said in part:

"* * * [T]oday in response to the Judge's question you said you were positive they contained marijuana * * *."

ber 11, 1969, he worked for the Portland, Oregon, Police Department, assigned to the narcotics unit. During this period he engaged in the purchase of various narcotic drugs, including marihuana, which resulted in between 60 and 70 indictments at the one time, all involving criminal activity in drugs.

■ In addition to his general experience in the identification of narcotics, Officer Koch testified that he had previously, during the several months' period of his undercover work in Portland, observed marihuana in defendant's apartment in the same clear sandwich baggies, such as are purchased at the supermarkets. The trial court had the benefit of the above information and, in addition, the trial court was accorded a view of the room divider to better enable it to assess the evidence. In examining the record we are satisfied that there was substantial evidence from which the court could have found that the marihuana was plainly visible to Officer Koch and he could and did recognize it as that narcotic. Where the evidence is such, the findings of the trial court will be upheld by this court. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968) ; *State v. Fisher,* 5 Or App 483, 484 P2d 864 (1971).

Affirmed.

SCHWAB, C. J., dissenting.

Since this case involves a warrantless seizure, the burden is on the state to establish its validity, *State v. Elkins,* 245 Or 279, 422 P2d 250 (1966), by "clear and convincing evidence," *State v. Douglas,* 260 Or 60, 488 P2d 1366 (1971), *cert denied* 406 US 974 (1972). Whether the seizure was valid breaks down into two questions: (1) was the marihuana in plain view?; and (2) if so, was its seizure "inadvertent" within the rule of *Coolidge v. New Hampshire,* infra? I

believe the state failed to sustain its burden on both of these questions.

Officer Koch testified at the suppression hearing that when he entered defendant's living room there was a room divider on his right that went from the floor almost to the ceiling. The shelves were cluttered with books, stereo equipment, a large aquarium, a house plant, and other personal belongings. The only light in the living room came from a single overhead bulb near where Officer Koch entered; the other side of the room divider was in shadows.

The officer testified that as he walked across the living room he looked through the room divider and observed what he believed to be a baggie of marihuana. The trial judge did not believe this to have been possible.

While Officer Koch sat on a couch and talked with the defendant, he again looked through the room divider. His testimony about his observations is set out in the majority opinion. Although the officer chose to express himself in a vocabulary of assorted legal terms, he never once said that he *saw marihuana.*

As for Officer Koch's prior training and experience, summarized by the majority, I would expect a witness with such a background to be more, not less, able to simply state that he *saw marihuana,* if such was the truth.

In short, as I read Officer Koch's testimony, the most he ever said was that he saw a "baggie" which he had strong probable cause to believe contained marihuana. Since there was no evidence that the officer *saw marihuana,* I do not believe the trial court's finding to the contrary is in any way binding on us.

Furthermore, even if Officer Koch did see marihuana in plain view before seizing it, I would hold it to be inadmissible under the authority of *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971), in which the United States Supreme Court held that under the Fourth Amendment evidence seized in plain view is inadmissible when the seizure was "not inadvertent."[1] I read "not inadvertent" to mean the police had the necessary information and time to obtain a search warrant.[2] In other words, in a plain-view-seizure case, I believe *Coolidge* requires us to hold evidence seized to be inadmissible when the police had sufficient grounds and adequate opportunity to first obtain a search warrant.

At the suppression hearing Officer Koch testified he had been in defendant's apartment "several times" during his undercover work. During all of these visits the officer had observed marihuana in the apartment. Officer Koch further testified to having at least once seen baggies of marihuana at the specific spot

---

[1] The doctrine of "inadvertent" discovery of incriminating evidence is not new to Oregon. *See,* State v. Hawkins, 255 Or 39, 41-2, 463 P2d 858 (1970):

"It should be made clear that we are not here talking about a situation where an officer, while searching in a place and manner justified by the items listed in the warrant, *inadvertently* stumbles upon obvious evidence of the crime pursuant to which the warrant was issued * * *." (Emphasis supplied.)

[2]

"Equating non-inadvertence with probable cause may be the most reasonable reading of Justice Stewart's opinion. He admitted that his discussion of plain view corresponded with that given in Trupiano v. United States, 334 U.S. 699, 708 (1948) * * * in which the Court refused to apply the plain-view exception to the seizure of a still and liquor by raiding agents because the authorities had an abundance of time and probable cause to obtain a warrant * * *." The Supreme Court, 1970 Term, 85 Harv L Rev 38, 244, n 35 (1971).

where he claims they were in plain view on December 12, 1969, and indicated that was the reason he examined that location on that occasion.

Assuming that Officer Koch's observations were reasonably contemporaneous with December 12 (no dates appear in the record before us), the police had probable cause to obtain a warrant to search defendant's apartment. An explanation of why they did not do so is indicated by *Coolidge*. If there was a sufficient explanation it was not produced by the state at the suppression hearing.

In addition, the entire method of effecting defendant's arrest suggests the possibility the officers also planned to make a search. A total of five officers participated in the arrest, even though it took place at 3 a.m., and even though it was apparently known that defendant lived alone. After making the arrest, the five officers in fact proceeded to make a complete search of the apartment that lasted most of an hour.[9]

Based on this record I believe it is impossible to say that the state sustained its burden of proving by clear and convincing evidence that the seizure in question was "inadvertent," and I do not interpret the majority opinion as holding the contrary.

Rather, as I understand the majority's reasoning, they hold *Coolidge* is not applicable to these facts because: (1) *Coolidge* applies to seizures of evidence, but not to seizures of contraband, and (2) *Coolidge* applies when police enter in uniform to make an arrest,

[9] As the majority observes, *Coolidge* involved a pre-planned intentional seizure of evidence. Even if the rule of *Coolidge* is limited to such situations, I doubt that on this record the state proved the seizure in this case was other than pre-planned and intentional.

but not when they enter by subterfuge pretending to be a friend of the potential arrestee's.

I disagree that *Coolidge* is distinguishable on either of these grounds. It is true that the *Coolidge* opinion states that the facts of that case involve seizure of evidence, not contraband. But the court's discussion of its prior decisions makes it clear to me they consider it a difference without a distinction. For example, the court describes *Trupiano v. United States*, 334 US 699, 68 S Ct 1229, 92 L Ed 1663 (1948), as a case where the plain view seizure was not inadvertent and therefore invalid, and describes *Ker v. California*, 374 US 23, 83 S Ct 1623, 10 L Ed 2d 726 (1963), as a case where the plain view seizure was inadvertent and thus valid. Both of these cases involved seizure of contraband—in *Trupiano* a still, and in *Ker* marihuana. This makes it impossible for me to read *Coolidge* as limited to seizures of evidence, and not applying to seizures of contraband.

Second, the majority holds *Coolidge* does not apply "where the relationship is that of guest-host as distinguished from an intrusion upon privacy as with an arrest warrant or search warrant." If the seizure of a car parked in a driveway was an intrusion on privacy, as *Coolidge* held, I fail to see how the seizure of items in defendant's apartment was not at least as much of an intrusion on privacy.

*Coolidge* does not go so far as to say that a policeman in the course of making an investigation cannot seize what he sees while cloaked in anonymity as an undercover agent. *Coolidge* only holds that if a policeman, in uniform or civilian clothes, has probable cause to search and time to get a search warrant based on that probable cause, he must do so—it will not do for

him under those circumstances to use subterfuge or an arrest warrant as a means of avoiding the necessity of obtaining a search warrant.

For the foregoing reasons I respectfully dissent.