On appellant's petition for reconsideration filed February 15, former opinion filed January 16 (32 Or App 85, 573 P2d 1259), petition for reconsideration allowed; former opinion withdrawn; reversed and remanded May 8, 1978

STATE OF OREGON, *Appellant,*

*v.*

DAVID WAYNE THOMAS, *Respondent.*

(No. 124611, CA 9167)

578 P2d 452

James A. Redden, Attorney General, Al J. Laue, Solicitor General, and Thomas H. Denney, Assistant Attorney General, Salem, for petition.

No appearance contra.

JOHNSON, J.

**JOHNSON, J.**

■ The state appeals from a trial court order sustaining defendant's demurrer to a uniform traffic citation and complaint. In our former opinion, we held that "[a]n order which merely sustains a demurrer and does not dismiss or set aside the complaint is not an appealable order under ORS 157.091 [sic—157.081] and ORS 138.060." 32 Or App at 187. We were in error.

ORS 138.060 provides in part:

"The state may take an appeal from the circuit court to the Court of Appeals from:

"(1) An order made prior to trial *dismissing or setting aside* the accusatory instrument;

"* * * * *." (Emphasis supplied.)

The history of ORS 138.060 indicates a clear intent to broaden the state's right to appeal in criminal cases to include appeals from orders sustaining demurrers to accusatory instruments. As we noted in our former opinion, under ORS 138.060 before amendment, it was well established that the state could not appeal from an order which merely sustained a demurrer to an accusatory instrument. *See e.g., State v. Cloran,* 233 Or 400, 374 P2d 748, 377 P2d 911, 378 P2d 961 (1963). At the time *Cloran* was decided, ORS 138.060 provided:

"The state may take an appeal to the Supreme Court from a *judgment for the defendant on a demurrer to the indictment* or from an order of the court arresting judgment." (Emphasis supplied.)

ORS 138.060, before amendment, restricted the state to appealing only from a judgment which was entered after a demurrer was sustained, thus effectively preventing the state from appealing from a pretrial order granting a motion to dismiss the accusatory instrument.

In 1971,[1] ORS 138.060 was amended to read:

"The state may take an appeal to the Court of Appeals from:

---

[1] 1971 Oregon Laws, chapter 644, § 1.

[ 189 ]

"(1) An *order* made prior to trial *dismissing* the indictment." (Emphasis supplied.)

The legislative history of this amendment indicates that the change in language was intended to broaden the state's right to appeal in criminal cases by eliminating the requirement that the state obtain a judgment before filing an appeal following the sustaining of a demurrer to the accusatory instrument. *See State v. Cannon,* 17 Or App 379, 381-383, 521 P2d 1326, *rev den* (1974). However, it was not clear from this new language whether the state could appeal from an order sustaining a demurrer to an accusatory instrument if the order did not also dismiss the instrument.

In 1973,[2] ORS 138.060 was further amended to provide that the state may take an appeal from an order "dismissing *or setting aside*" an accusatory instrument. (Emphasis supplied.) An order sustaining a demurrer to an accusatory instrument clearly sets it aside and is thus an order from which an appeal will lie under ORS 138.060(1).

On the merits, defendant was charged by uniform traffic citation and complaint with driving while under the influence of intoxicants, ORS 487.540. The complaint alleged:

"That on the 8 day of May, 1977 at 10:10 PM * * * Thomas, David Wayne * * * did unlawfully operate vehicle, lic. No. MGM-327 * * * on a public highway, to-wit Lancaster at or near Center * * * and then and there commit the following traffic crime * * * DUII *(prior conv. 04-02-76 DUII State of Calif.)* in violation of state statute in such case made and provided * * *." (Emphasis supplied).

ORS 487.540 designates driving while under the influence of intoxicants as a Class A traffic infraction. ORS 484.365 provides:

"(1) Any offense that would otherwise be punishable as a Class A traffic infraction shall be prosecuted and be

---

[2] 1973 Oregon Laws, chapter 836, § 276.

punishable as a Class A misdemeanor *if the defendant has been convicted of any class A traffic infraction or traffic crime within a five-year period immediately preceding the commission of the offense,* and the previous conviction or dismissal was not part of the same transaction as the present offense.

"(2) *In applying subsection (1) of this section, any conviction of a Class A infraction or a traffic crime as described in subsections (3) and (4) of this section, or a conviction before June 27, 1975, of any of the statutory counterparts of these offenses which occurred within the immediate five-year period before the commission of the present offense, shall be included* whether the previous conviction occurred before or after June 27, 1975.

"(3) As used in this section, 'Class A traffic infraction' includes:

"(a) Driving while under the influence of intoxicants.

"(b) Failure to perform the duties of a driver involved in an accident or collision which results only in damage to the property of another.

"(4) As used in this section, 'traffic crime' includes:

"(a) Reckless driving.

"(b) Driving a motor vehicle while suspended or revoked.

"(c) Failure to perform the duties of a driver involved in an accident or collision which results in injury or death to any person.

"(d) Fleeing or attempting to elude a police officer." (Emphasis supplied).

ORS 484.380 further provides in part:

"(1) In a prosecution under ORS 484.365, the state, municipality or political subdivision shall plead and prove the previous conviction unless the defendant stipulates to that fact prior to trial."

■ Defendant demurred to the complaint on the ground that it failed to state facts constituting an offense in that the prior conviction pled was a foreign conviction. The trial court sustained the demurrer ruling that a "prior foreign conviction" could not be used to elevate a traffic infraction to a traffic crime under ORS 484.365. We agree, but the trial court erred

in sustaining defendant's demurrer to the complaint insofar as it charged the traffic *infraction* of driving under the influence of intoxicants.

The provisions of ORS 484.365 neither expressly include nor exclude the use of a prior foreign conviction. The statute, however, speaks in terms of "traffic infraction" and "traffic crime" which are words of art used in the Oregon Vehicle Code to designate particular types of prohibited conduct. The descriptive phrases used to identify the offenses in ORS 484.365(3) and (4) are in fact the statutory titles of those offenses. Although subsection (2) of ORS 484.365 speaks in terms of "statutory counterparts" to the present offenses under the vehicle code, it is clear from the context and the legislative history that "statutory counterparts" refers to offenses defined under the former vehicle code rather than offenses which might be counterparts to the Oregon offenses in a foreign jurisdiction's statutes. The phrase "statutory counterparts" expressly refers to convictions occurring before June 27, 1975, the effective date of the new vehicle code. The official Commentary to the Proposed Vehicle Code states that "[c]onvictions occurring before the effective date of this Act would be included." *See* Proposed Oregon Vehicle Code 101, Commentary, § 134 (1975). There is no reference or suggestion in the code commentary concerning foreign convictions. The implication is that foreign convictions were not to be included.

The state argues that we should construe ORS 484.365 to apply to foreign convictions because the statutory scheme of the vehicle code indicates a legislative intent to distinguish, particularly with respect to punishment, between first offenders and repeat offenders who commit certain serious traffic offenses. However, upon close examination of the statutory scheme, it appears that the legislature made a *conscious decision not to enhance punishment* under ORS 484.365 on the basis of prior foreign convictions. ORS 484.365 was enacted in 1975 as part of the new

vehicle code.[3] The 1975 Vehicle Code represented a major revision of existing law as well as the creation of entirely new provisions. Among the existing vehicle code provisions incorporated into, and revised to conform to, the new code provisions were those relating to habitual offenders, ORS 484.700 to 484.750. ORS 484.705, which defines "habitual offender," refers expressly to persons who have been previously convicted of traffic offenses in other jurisdictions.[4] The legislature thus had before it at the very time it was engaging in a comprehensive revision of the existing vehicle code a statute expressly providing for the use of a prior foreign conviction. The fact that the legislature did not use such express language in creating the provisions of ORS 484.365 indicates that it did not intend foreign convictions to be included.

The state also maintains that a construction of ORS 484.365 to include prior foreign convictions is supported by an examination of analogous provisions of the criminal code, i.e. the "ex-convict in possession" statute, ORS 166.270, and the "dangerous offender" statute, ORS 161.725. However, as the state acknowledges, both statutes now expressly provide that

---

[3] 1975 Oregon Laws, chapter 451, § 134.

[4] ORS 484.705 provides in pertinent part:

"(1) As used in ORS 484.700 to 484.750, unless the context requires otherwise, 'habitual offender' means any person, resident or nonresident, who within a five-year period, has been convicted of or forfeited bail for the number and kinds of traffic offenses described by paragraphs (a) and (b) of this subsection, as evidenced by the records maintained by the division.

"* * * * *

"(2) The offenses included in paragraphs (a) and (b) of subsection (1) of this section include city traffic offenses, as defined by ORS 484.010, and offenses under any federal law, *or any law of another state,* including subdivisions thereof, substantially conforming thereto but do not include nonmoving offenses as defined in ORS 483.380 to 483.545, 487.895, 487.900, 487.905 and 487.915 to 487.925.

"(3) As used in ORS 484.700 to 484.750, 'division' means the Motor Vehicles Division of the Department of Transportation or a similar agency of another state." (Emphasis supplied).

[ 193 ]

foreign convictions are included in the terms of the statute.[5]

Prior to 1975, ORS 166.270 did not expressly include foreign convictions. In *State v. Jones,* 4 Or App 447, 452, 479 P2d 1020 (1971), this court held that a prior conviction of a felony in another state was within the terms of the former statute. However, *Jones* is distinguishable from the situation here because the issue was the interpretation of what constitutes a prior "felony." The term "felony" is one of general application which can be defined by resort to the statute of the other jurisdiction. This is in contrast to the terms "traffic infraction" and "traffic crime" used in ORS

[5] ORS 161.725 provides in pertinent part:

"The maximum term of an indeterminate sentence of imprisonment for a dangerous offender is 30 years, if the court finds that because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public and if it further finds, as provided in ORS 161.735, that one or more of the following grounds exist:

"* * * * *

"(2) The defendant is being sentenced for a felony that seriously endangered the life or safety of another, has been previously convicted of a felony not related to the instant crime as a single criminal episode, and the court finds that he is suffering from a severe personality disorder indicating a propensity toward criminal activity.

"(3) As used in this section, 'previously convicted of a felony' means:

"* * * * *

"(c) Previous conviction by a general court-martial of the United States *or in a court of any other state* or territory of the United States, or of the Commonwealth of Puerto Rico, of an offense which at the time of conviction of the offense was punishable by death or by imprisonment in a penitentiary, prison or similar institution for a term of one year or more and which offense also at the time of conviction of the instant crime would have been a felony if committed in this state." (Emphasis supplied).

ORS 166.270 provides in part:

"(1) Any person who has been convicted of a felony under the law of this state *or any other state,* or who has been convicted of a felony under the laws of the Government of the United States, who owns, or has in his possession or under his custody or control any pistol, revolver, or other firearms capable of being concealed upon the person, or machine gun, commits the crime of exconvict in possession of a firearm." (Emphasis supplied).

484.365 which have neither general application nor are defined in other statutes.

Perhaps the most compelling reason to believe that the legislature did not intend to include foreign convictions under ORS 484.365 lies in an analysis of the nature of traffic offense convictions throughout the country and the potential problems posed by the attempted incorporation of the provisions of another state's law into Oregon's. When it enacted ORS 484.365 and the other provisions of the 1975 Vehicle Code, the legislature undoubtedly was aware that each of the fifty states has adopted its own substantive and procedural standards for traffic convictions in general, and driving-while-under-the-influence convictions in particular, with respect to the classifications and elements of the offenses, burden of proof, level of prohibited blood-alcohol content, penalties for violation, etc. While many states' systems are similar to Oregon's, many are different to some degree. In view of the differences, it is reasonable to assume that the legislature did not expressly include foreign convictions in ORS 484.365 in order to avoid a potentially unmanageable system in which trial courts would be called upon to determine to what extent the foreign conviction was comparable to a conviction for a similar offense in Oregon, or indeed, whether the offenses are similar. This difficulty is compounded by the fact that ORS 484.365 speaks in the criminal law term of "conviction" of a traffic crime or a Class A traffic infraction, but under the Oregon Vehicle Code, a Class A traffic infraction is civil, not criminal. However, the Class A traffic infraction of driving while under the influence of intoxicants has been judicially declared to be criminal in nature. *Brown v. Multnomah County,* 280 Or 95, 570 P2d 52 (1977).

■ ORS 484.365 is a penal statute. The common law rule with respect to penal statutes is strict construction. Under this rule, the fact that the statute does not expressly provide for the use of prior foreign convictions precludes the construction urged by the state.

[ 195 ]

However, the common law rule has been abrogated with respect to the Oregon Criminal Code and replaced by ORS 161.025, which provides:

"* * * Chapter 743, Oregon Laws 1971, shall be construed according to the fair import of its terms * * *."

ORS 484.365 is not a part of Chapter 743, and thus does not fall within the terms of the quoted statute. However, assuming arguendo that the rule embodied in the statute applies to all penal statutes, whether or not found in the Criminal Code, the construction of ORS 484.365 we adopt here is according to the fair import of its terms.

■ While the trial court was thus correct in ruling that a prior foreign conviction is not included in the terms of ORS 484.365, the court erred in sustaining the demurrer to the complaint. The complaint was sufficient to charge the traffic infraction of driving under the influence of intoxicants with or without an allegation of a prior conviction. *State v. Carpenter,* 29 Or App 879, 565 P2d 768 (1977); ORS 484.170.

Petition for reconsideration allowed; former opinion withdrawn; reversed and remanded.

**TANZER, J.,** specially concurring.

I specially concur on the basis of the words adopted by the legislature, regardless of what it may have intended.

**RICHARDSON, J.,** specially concurring.

I concur with the majority on the procedural issue that the state may appeal allowance of a demurrer. I, however, disagree with the holding of the majority on the merits of the demurrer.

The lead opinion begins the analysis of ORS 484.365 by stating that that section "neither expressly include[s] nor exclude[s] the use of a prior foreign conviction" (34 Or App at 192.) From this observation,

with which I concur, the analysis properly proceeds to determine legislative intent from extrinsic indicators. Any such analysis must start with an appreciation of the legislative purpose which prompted the enactment.

Among the primary purposes of the Motor Vehicles Code is the promotion of traffic safety, the removal of bad drivers from the highway and the prevention of unsafe driving conduct by the deterrent influence of penalties.

The lead opinion recognizes that Oregon has effectively abrogated the common law rule that penal statutes are to be strictly construed, citing ORS 161.025. I concur with the suggestion that that statute sets forth an acceptable principle of statutory construction. Although, by its terms, it does not specifically apply to penal provisions in the motor vehicle code, it should nevertheless be applied by Oregon courts in determining the proper application of any penal statute. It would be strange to apply a rule of strict construction to a penal statute codified in the motor vehicle code and eschew the rule when interpreting criminal code provisions.

The lead opinion quotes only a portion of that statute to the effect that penal provisions should be construed according to the "fair import of [their] terms." The latter portion of that section, ORS 161.025(2), ought also to be applied so that statutes are construed "to promote justice and to effect the purposes stated." The narrow, restrictive construction of ORS 484.365, postulated by the lead opinion, frustrates rather than effectuates the purposes of the vehicle code.

ORS 484.365 seeks to effectuate the general purposes of the vehicle code by subjecting multiple offenders to harsher punishments. Given the ready movement of persons driving vehicles throughout the several states it is difficult to assume the legislature intended, as a general proposition, to exclude foreign

[ 197 ]

convictions in determining multiple offender status. Unless such an intent is clearly expressed in the Act the courts ought not frustrate legislative purposes by restrictive interpretations.

The lead opinion determines this restrictive interpretation by two essential routes. The first results from a reading of ORS 484.365(2):

"In applying subsection (1) of this section, any conviction of a Class A infraction or a traffic crime as described in subsections (3) and (4) of this section, or a conviction before July 1, 1976 [the effective date of this section] of any of the statutory counterparts of these offenses which occurred within the immediate five-year period before the commission of the present offense, *shall be included whether the previous conviction occurred before or after July 1, 1976.*" (Emphasis added.)

The lead opinion concludes "statutory counterparts" relate only to offenses cognizable under the previous Oregon Vehicle Code: "The phrase 'statutory counterparts' expressly refers to convictions occurring before June 27, 1975, the effective date of the new vehicle code." (34 Or App at 192.) However, as the emphasized portion of the statute provides, the statutory counterpart conviction is to be included in the enhancement scheme whether the convictions occur before or after the effective date of that provision. In essence a conviction for a statutory counterpart of a Class A traffic infraction or crime is included whenever it occurs. This supports an interpretation that such counterpart relates to a statutory definition of comparable offenses in any jurisdiction. To follow the reasoning of the lead opinion would make the last sentence of subsection (2) redundant and meaningless.

The lead opinion notes that ORS 484.700 to 484.750 expressly provides for the use of foreign convictions in determining habitual offender status. From this fact the lead opinion concludes that had the legislature intended foreign convictions to be used in the enhancement provisions of ORS 484.365 it would have used language similar to that found in ORS 484.700 to

484.750. It is more logical to assume that had the legislature made a conscious choice not to allow use of foreign convictions in elevating a Class A infraction to a crime it would have used specific limiting language. The use of the term "statutory counterpart" does not limit the prior convictions to violations of Oregon law. "Statutory counterpart" is not a term of art in the Oregon statutes and should be interpreted in light of the evident statutory purposes.

The second line of reasoning postulated by the lead opinion assumes legislative solicitude for the judiciary. It is argued that the "most compelling reason to believe that the legislature did not intend to include foreign convictions" is that the legislature did not want to saddle the courts with the "unmanageable system" of determining if a foreign conviction was in fact a statutory counterpart of the specified Oregon offenses. The difficulty would result, it is reasoned, because each of the fifty states have adopted their own substantive and procedural standards for traffic convictions.

I first note that procedural standards have little to do with determining if conduct proscribed by foreign statutes are a statutory counterpart of an Oregon offense. I assume by procedural standards the lead opinion means such as trial by court or by jury, the size of the jury, the required burden of proof and the available affirmative defenses. These relate to the route by which a conviction is obtained and not to what the statute prohibits. It could be inferred from this statement in the lead opinion that the court would henceforth hold that conviction of a statutory counterpart referred to in ORS 482.460(1), 482.820 and 484.705(2) would have to compare favorably with the Oregon statutory description of the offense and be obtained by Oregon type procedure. This *would* introduce a potentially "unmanageable system."

The supposed solicitude for the judiciary is not evident in other portions of the traffic code.

ORS 482.460(1) provides:

"The division may suspend or revoke the license of any resident of this state upon receiving notice of the conviction of such person in another state of an offense therein which, if committed in this state, would be grounds for the suspension or revocation of the license of an operator or chauffeur."

The Motor Vehicles Division is initially given the "manageable" task of determining if a foreign conviction is comparable to an Oregon provision requiring suspension of the driver's license. The court would ultimately have to participate in this "manageable system" in the event of an appeal from the order of suspension.

Reading ORS 482.460(2) with ORS 484.430 the defendant in this case would be subject to a mandatory one year suspension based on his prior foreign conviction even though the lead opinion holds he cannot be sentenced for a crime based on that same conviction. Rather an anomalous result of a comprehensive statutory scheme for traffic safety.

ORS 482.810 through 482.840 set forth Oregon's adoption of the Driver's License Compact. In essence the compact provides that the party states shall exchange information regarding convictions within their several jurisdictions. It also provides that the state which issues an operator's license shall give the same effect, respecting suspension of that license, to a foreign conviction, for certain offenses, as it would if the conduct of the driver had occurred in the licensing state. The Motor Vehicles Division is given the task of administering the compact in Oregon. The legislature thus projected the Division into an apparently manageable system not markedly different from a system of applying foreign convictions to elevate a Class A infraction to a crime. It is difficult to imagine the legislature felt the Motor Vehicles Division is capable of managing such a system while the court is not. It is sufficient to cite that body of jurisprudence known as

conflicts of laws to illustrate courts are constantly engaged in and well equipped to interpret foreign law and apply it to Oregon controversies.

The Oregon Habitual Traffic Offenders Act, ORS 484.700 et seq, allows the status of Habitual Offender to be imposed based on foreign convictions which substantially conform to the Oregon offense. Here again the Oregon courts are called upon to construe foreign law and determine if the foreign conviction is a statutory counterpart of an Oregon offense.

The anomaly again exists in applying the Habitual Offender Act to this defendant. If the defendant is ultimately convicted of a Class A traffic infraction, he is not subject to the greater criminal penalties despite a previous conviction. If, however, he has or incurs another conviction, even in another state, he will be subject to being declared a habitual traffic offender by utilizing his foreign conviction.

Admittedly, these statutory provisions outlined above relate to suspension of licenses based on multiple convictions and are not, strictly speaking, penalty statutes. However, they impose harsher consequences for traffic offense convictions based upon previous driving conduct of the person convicted. This illustrates a broad legislative policy to impose more onerous consequences upon multiple offenders wherever the offense was committed.

These provisions also illustrate that extricating the judiciary from the "unmanageable system," seen by the lead opinion, has simply not been a matter of legislative concern. This essentially removes the "most compelling reason" seen by the lead opinion to construe ORS 484.365 in a restrictive fashion.

In meeting the arguments of the state based on *State v. Jones,* 4 Or App 447, 479 P2d 1020 (1971), the lead opinion distinguishes that case (34 Or App at 194). The distinction is based on the premise that the term "felony" is one of general application while the

[ 201 ]

terms "traffic infraction" and "traffic crime" have no such general application and are not defined in foreign statutes. That distinction, if such it is, is not material to resolution of the problem at issue. The substantive offense described in the statute may be the same as comparable offense described in a foreign statute whether it is called a "traffic infraction," "traffic crime" or "traffic widget." The use of the term "traffic infraction" does not mean the offense so named is peculiar to Oregon. Traffic infraction merely describes a category of punishment. In comparing foreign with local offenses we must look beyond the name and analyze the substantive description of the offense.

It appears, absent this supposed distinction, *State v. Jones, supra,* has more vitality than the lead opinion ascribes to it. In *Jones* we determined a felony conviction in another jurisdiction could serve as a basis for a conviction under former ORS 166.270 which prohibits a convicted felon from possessing a concealable firearm. We noted the statute, by its terms, did not include or exclude a foreign felony conviction and determined, based on the evident purpose of the Act, that a foreign conviction could be used. The same reasoning should apply in construing ORS 484.365.

I conclude the legislature intended, by use of the term "statutory counterpart," to include foreign convictions. I concur that the case should be reversed but it should be reversed with instructions to overrule the demurrer and allow the matter to proceed to trial as a traffic crime.

Thornton, Joseph and Roberts, JJ. concur in this specially concurring opinion.