Argued and submitted March 7, affirmed August 8, 1985

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# LEONARD RAY PARKER,
*Petitioner on Review.*

## (83-192CR; CA A29923; SC S31289)

704 P2d 1144

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the briefs was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

LENT, J.

## LENT, J.

The question presented is whether a motor vehicle driver who intentionally collides with another's vehicle has had an "accident" within the meaning of ORS 483.602.

ORS 483.602 provides:

"(1)  The driver of any vehicle involved in an accident which results in injury or death to any person or causes damage to a vehicle which is driven or attended by any person, immediately shall stop such vehicle at the scene of the accident, or as close thereto as possible, and shall remain at the scene of the accident until the driver has fulfilled the requirements of subsection (2) of this section. Every such stop shall be made without obstructing traffic more than is necessary.

"(2)  The driver of any vehicle involved in any accident resulting in injury or death to any person or damage to any such vehicle shall:

"(a)  Give to the driver or surviving passenger, or any person not a passenger injured as a result of such accident, the name, address and the registration number of the vehicle which the driver is driving, and the name and address of any other occupants of such vehicle.

"(b)  Upon request and if available, exhibit and give the number of the operator's or chauffeur's license of the driver to the persons injured, or to the occupant of or person attending any vehicle damaged.

"(c)  Render to any person injured in such accident reasonable assistance, including the conveying or the making of arrangements for the conveying of such person to a physician, surgeon or hospital for medical or surgical treatment, if it is apparent that such treatment is necessary or if such conveying is requested by any injured person.

"(3)  Any witness to the accident shall furnish to the driver or occupant of such vehicles, or injured person, the true name and address of the witness.

"(4)(a)  A driver involved in an accident which results in injury or death to any other person and who fails to perform the duties required under subsection (1) of this section commits a Class C felony.

"(b)  A driver involved in an accident which results only in damage to a vehicle which is driven or attended by any other person and who fails to perform the duties required

under subsection (1) of this section commits a Class A misdemeanor.

"(c) A witness to an accident who fails to perform the duties required under subsection (3) of this section commits a Class B traffic infraction."

Defendant was indicted on three counts, the first for criminal mischief in the first degree, ORS 164.365;[1] the second for menacing, ORS 163.190;[2] and the third for failure to perform the duties of a driver involved in an accident, ORS 483.602. The third count alleged that the violation of ORS 483.602 arose out of the same act and transaction alleged in the first two counts, in which it was charged that defendant intentionally used his motor vehicle to damage another person's vehicle.

Defendant orally demurred to the third count "on the ground that it doesn't state a crime."[3] From the bench the trial judge stated:

"The Court is saying that Count III fails to state a cause of action because it alleges an intentional collision, and then seeks to apply the statute which pertains to an accident."

Thereafter, the court entered a written order sustaining the demurrer "on the grounds and for the reason that the facts stated in said Count do not constitute an offense."

---

[1] ORS 164.365 provides:

"(1) A person commits the crime of criminal mischief in the first degree who, *with intent* to damage property, and having no right to do so nor reasonable ground to believe that the person has such right, damages or destroys property of another:

"* * * * *

"(3) Criminal mischief in the first degree is a Class C felony." (Emphasis added.)

[2] ORS 163.190 provides:

"(1) A person commits the crime of menacing if by word or conduct he *intentionally attempts* to place another person in fear of imminent serious physical injury.

"(2) Menacing is a Class A misdemeanor." (Emphasis added.)

[3] ORS 135.630(4) permits a defendant to demur to an accusatory instrument when it appears from the face thereof that the facts stated do not constitute an offense. A demurrer is required to be in writing by ORS 135.610(2), but the state did not object in the trial court to the demurrer being presented orally, and the trial court entertained the demurrer.

The state appealed. The Court of Appeals reversed and remanded the case for trial, holding that the term "accident" in ORS 483.602 includes both intentional and unintentional vehicular collisions.[4] *State v. Parker,* 70 Or App 397, 402, 689 P2d 1035, 1038 (1984).

We allowed review to consider the issue posed at the outset of this opinion and because the first interpretation of a statute is involved. Before we reach this issue, however, we must resolve a preliminary question whether the state can appeal from an order sustaining a demurrer to one count of a multi-count accusatory instrument.

ORS 138.060(1) provides that "[t]he state may take an appeal from the circuit court or the district court to the Court of Appeals from: (1) An order made prior to trial dismissing or setting aside the accusatory instrument."

In *State v. Robertson,* 293 Or 402, 649 P2d 569 (1982), defendants were indicted in a two-count indictment. The circuit court sustained a demurrer to one count, ruling that the facts alleged did not state a crime. After examining the legislative history of demurrers in criminal cases, we noted that when the Court of Appeals took jurisdiction of the *Robertson* case it "extended its earlier decision in *State v. Thomas.*"[5] 293 Or at 407, 649 P2d at 573. We also noted that in *Thomas* the Court of Appeals had voiced some doubt whether the 1971 amendments to ORS 138.060 allowed the state to appeal from orders sustaining demurrers but not dismissing the instruments, yet it had found that the addition of the words "setting aside" in 1973 covered this type of order. 293 Or at 407, 649 P2d at 573. We refused to disturb the Court of Appeals' decision that it could properly take jurisdiction

---

[4] The Court of Appeals cited ORS 482.602 as the statute involved. This must be a typographical error. *State v. Parker,* 70 Or App 397, 402, 689 P2d 1035 (1984).

[5] The Court of Appeals examined this issue in *State v. Thomas,* 32 Or App 85, 573 P2d 1259 (1978), *reconsidered* 34 Or App 187, 578 P2d 452 (1978). There, defendant was charged with driving under the influence of intoxicants and demurred on the ground that the complaint failed to state facts which constituted a crime. The trial court sustained the demurrer, and the state appealed. The Court of Appeals, on reconsideration, held that the order sustaining defendant's demurrer was appealable under ORS 138.060(1) because it "sets aside" the instrument. 34 Or App at 190, 578 P2d at 454. The court concluded "the history of ORS 138.060 indicates a clear intent to broaden the state's right to appeal in criminal cases to include appeals from orders sustaining demurrers to accusatory instruments." 34 Or App at 189, 578 P2d at 453.

over such an order because the amendments to ORS 138.060 were intended "to broaden the state's ability to appeal orders that invalidate accusatory instruments." 293 Or at 407, 649 P2d at 573.

In the present case, the state has appealed from an order sustaining defendant's demurrer to one count of a three-count indictment. Procedurally, there is no difference between the situation presented here and that in the *Robertson* case. As in *Robertson,* the order sustaining defendant's demurrer "invalidates" that portion of the accusatory instrument. Because the order sets aside one count of the accusatory instrument, jurisdiction is proper.

On the merits, defendant's position is that the plain meaning interpretation of the word "accident" does not include an intentional act. Defendant cites Black's Law Dictionary 14 (5th ed 1979) which defines "accident" as

"* * * [A] fortuitous circumstance, event, or happening; an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens; an unusual, fortuitous, unexpected, unforeseen or unlooked for event, happening or occurrence; an unusual or unexpected result attending the operation or performance of a usual or necessary act or event; chance or contingency, fortune, mishap; some sudden and unexpected event taking place without expectation, upon the instant, rather than something happening by chance; something unforeseen, unexpected, unusual, extraordinary or phenomenal, taking place not according to the usual course of things or events, out of the range of ordinary calculations; that which exists or occurs abnormally, or an uncommon occurrence. * * *"

Further, defendant asserts the court should follow the decision in *State v. Liuafi,* 1 Haw App 625, 623 P2d 1271 (1981), where the Hawaii Court of Appeals held the plain meaning of the word "accident," when taken into consideration with the purpose of Hawaii's "hit and run" statute, Hawaii Rev Stat § 291C-12 (1976),[6] does not include the intentional attempt to

---

[6] Section 291C-12 is part of Hawaii's statewide Traffic Code. The section "requires the driver of any vehicle involved in an accident resulting in injury to or death of any person to remain at the scene of the accident until he or she has fulfilled the requirement of Hawaii Rev Stat § 291C-14 (1976) to give information and render aid." *State v. Liuafi,* 1 Haw App 625, 641, 623 P2d 1271, 1281 (1981).

murder someone with a vehicle. *Liuafi,* 1 Haw App at 643, 623 P2d at 1282. Liuafi was charged with and convicted of attempted murder and failure to give aid when he intentionally ran over a person. Liuafi claimed as error the trial court's failure to instruct the jury that the two offenses required inconsistent findings of fact and, as a result, under Hawaii statutes he could not be convicted of both offenses. 1 Haw App at 643, 623 P2d at 1282. The court concluded that under Hawaii's criminal code, Hawaii Rev Stat § 701-109(1)(c) (1976),[7] Liuafi "could not be *convicted* of both attempted murder and of violation of HRS § 291C-12." (Emphasis added.) 1 Haw App at 643, 623 P2d at 1282. Referring again to Hawaii Rev Stat § 701-109(1) (1976), the court said, however, that it wasn't error to *charge* Liuafi with both offenses. 1 Haw App at n. 7, 623 P2d at n. 7. As required by Hawaii Rev Stat § 701-104 (1976) (principles of construction), the court construed the word "accident" in its usual sense, and took into consideration the context in which it is used as well as the statute's purpose.

In making its decision in this case, the Court of Appeals concluded there was "nothing in the statute [ORS 483.602] to suggest a concern that the cause of the occurrence — whether it be the result of a purely fortuitous event, simple or criminal negligence, or intentional conduct — should have any bearing on its application." 70 Or App at 402, 689 P2d at 1038. We agree.

■ When construing a statute, "the intention of the legislature is to be pursued if possible * * *." ORS 174.020. To do so, the court may examine the language used, the statutory objective, and other evidence of the intended meaning. *Curly's Dairy, Inc. v. State Dept. of Agriculture,* 244 Or 15, 21, 415 P2d 740, 743 (1966).

---

[7] Hawaii Rev Stat § 701-109(1)(c) (1976) provides, in pertinent part:

"(1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. He may not, however, be convicted of more than one offense if:

"* * * * *

"(c) Inconsistent findings of fact are required to establish the commission of the offenses * * *."

"The entire statute should be examined, including its preamble. *State ex rel. Peterson v. Woodruff,* 179 Or 640, 173 P2d 961."

244 Or at 21, 415 P2d at 743.

"The starting point in every case involving a determination of legislative intent is the language of the statute itself. *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 US 322, 330 [98 S. Ct. 2370, 2375, 57 L.Ed.2d 239] (1978)."

*Whipple v. Howser,* 291 Or 475, 479, 632 P2d 782, 784 (1981).

In 1931, the legislature enacted HB 355 as Chapter 360 of the Oregon Laws. The purpose was to set up a uniform traffic law which regulated traffic, provided for traffic control, defined the power of the enforcement authorities, and provided penalties for violations. Sections 15 and 16 (later codified as ORS 483.602) contained the word "accident" throughout whenever the act of striking one's vehicle against another objection, whether a person or property, was mentioned. Sections 16 and 17 also contained the word "accident" when setting out procedures for the driver to file an accident report and for the repair garage to report serious accidents.

In 1937, the legislature amended the statute, adding two new subsections. Subsection (d) required a driver to leave written notice if his vehicle *"collides with* any vehicle which is unattended." (Emphasis added.) Subsection (e) required "the driver of any vehicle involved in an *accident* resulting only in damages to fixtures or property * * * adjacent to a highway" to notify the owner of the property. (Emphasis added.)

In 1939, the legislature changed the words "collided with," used in subsection 15(c) to refer to an accident resulting in injury or death, to the word "damaged," but otherwise made no substantive changes to the statute. Since 1939, there have been several changes made to the statute; however, the word "accident" and the way it is used within the section has not been changed.

After examining the statute from its enactment through to its present form, we find no indication that the legislature intended the word "accident" to be interpreted so literally as to exclude intentional impacts between a vehicle and an object. The word "accident" has never been defined in the chapter, but it has been used throughout sections 15 and

16 to represent situations where an impact between a vehicle and an object has occurred. No adjectives were used to qualify or restrict the word in any way. Further, the legislature chose to use the words "collides with" in section 15(c) when referring back to the "accident" in which the driver was involved. In subsection (d) the words "collides with" were used when referring to a situation where a driver's vehicle struck an unattended vehicle, whereas the word "accident" was used in subsection (c) when referring to a situation where a driver's vehicle damages another person's property adjacent to the highway. Webster's Third New International Dictionary 445 (unabridged 1971) defines "collide" as "to strike against; to become impelled into violent contact; to strike or dash together in collision typically by accident with a degree of force and shock * * *; to meet in sharp direct opposition * * *." From the illustrations above, it appears the legislature used "accident" and "collide" interchangeably. The word "accident," therefore, is used in a generic sense, to mean any occasion in which a driver's vehicle "collides with" or, in other words, strikes against another object.

> "Words of common use are to be taken in their natural and obvious meaning and significance. That sense of the words is to be adopted which best harmonizes with the context and promotes the policy and objectives of the legislation. *Superior Oil Syndicate v. Handley,* 99 Or 146, 195 P 159 (1921)."

*State v. Oregon State Motor Association,* 248 Or 133, 137, 432 P2d 512, 515 (1967).

■ When taken in its natural and obvious sense, "accident" can mean "if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens." Black's Law Dictionary, *supra.* This sense of the word harmonizes well with the purpose for enacting the statute which was to establish a comprehensive body of law covering all aspects of traffic on Oregon highways. As stated in the preamble of Chapter 360, the act covers the regulation of traffic with provisions for signs and signals; provisions defining the local authority's power to make rules, regulations, and ordinances; provisions for enforcement; provisions for the disposition of fines; and provisions for violation penalties. Or Laws 1931, ch 360. From this all-encompassing perspective, it seems logical that the legislature would intend to use the broadest sense of

the word "accident"; one which includes intentional, as well as unintentional, conduct. To interpret "accident" so as to include only unintentional conduct would exclude some of the situations for which the law was enacted. As the Court of Appeals stated, "[I]t makes no sense to read the statute as imposing duties on persons who negligently injure others or damage their property but as absolving persons who do so intentionally from any such duties." 70 Or App at 402, 689 P2d at 1038.

In summary, we hold that an order sustaining a demurrer to one count of a multi-count accusatory instrument is an appealable order under ORS 138.060(1) because the demurrer "sets aside" that portion of the instrument. We also hold that a motor vehicle driver who intentionally collides with another's vehicle has had an "accident" within the meaning of ORS 483.602.

The decision of the Court of Appeals is affirmed.