*[751] SCHWAB, C. J.
Defendant appeals her conviction upon trial to the court for criminal drug promotion in violation of ORS 167.222,[1] contending that ORS 167.222 is unconstitutionally vague and overbroad. Given that our first duty is to construe ORS 167.222 in a constitutional manner if possible,[2] the constitutional argument also necessarily raises a statutory construction issue.[3] We conclude that the correct interpretation of ORS 167.222 negates any need to reach the constitutional issue. The specially concurring judge would hold ORS 167.222 unconstitutional. Although we differ regarding whether the decision is more properly based on statutory or constitutional grounds, we are unanimous in reversing defendant’s conviction.
Although the facts of this case are not particularly germane to an analysis of the meaning or constitutionality of ORS 167.222, they do illustrate a contrary possible interpretation of the statute which we here *[752] reject. In December of 1976, defendant was visiting friends in Portland for the holidays. She became a casual acquaintance of one George Weninger, meeting him when he gave her a ride while hitchhiking. On December 21 she went to Weninger’s apartment to request a ride to the freeway so she could hitchhike to Tacoma, Washington to visit her brother. Weninger agreed to help defendant but stated there would be some delay because he was expecting a friend.
Later one Stephen Hanson arrived carrying a closed cardboard box. Hanson handed the box to Weninger who placed it under a table.
Police officers had Weninger’s apartment under surveillance because of a tip that a young man would be delivering marihuana. Having observed Hanson enter carrying the box, Officer Burger, who was working undercover, rang for Weninger’s apartment. Weninger answered the door. Burger stated he wanted to buy marihuana. Weninger agreed to sell. Burger followed Weninger into the apartment, entering within about five minutes of Hanson’s arrival. Weninger produced the box Hanson had brought, opened it and displayed the marihuana it contained to Burger. Weninger and Burger then exchanged marihuana for money.
Burger then left, joined with three other officers waiting outside, immediately went back to Weninger’s apartment and arrested all present.
Burger also testified that when he was in the apartment, Hanson appeared to be smoking marihuana which he deduced from the facts that Hanson was smoking something and there was the smell of marihuana smoke in the air. Burger further testified that when he returned and arrested all present, he seized marihuana seeds, stems and "roaches” from several locations in the apartment. He admitted that there was probably less than an ounce seized in the apartment.
*[753] Defendant testified that prior to the transaction between Weninger and Burger she was unaware of any marihuana being in the apartment. She admitted she learned the cardboard box Hanson had brought contained marihuana when Weninger opened it to show Burger. She agreed that there was a lot of smoke in the apartment but said she thought it was tobacco smoke. She explained that she remained in the apartment after she learned that marihuana was present because she was desperate for a ride to the freeway and Weninger was the only person she knew who would assist her. The trial court specifically found this explanation to be credible.
In sum, the evidence establishes that defendant visited Weninger’s apartment once, became aware that marihuana was present and being sold when Weninger and Burger made a deal, and "remained” in the apartment for the brief interval thereafter — a matter of minutes — until Burger returned and arrested her.
When defendant was arrested, ORS 167.222(1) provided:
"A person commits the offense of criminal drug promotion if he knowingly maintains, frequents, or remains at a place:
"(a) Resorted to by drug users for the purpose of unlawfully using narcotic or dangerous drugs; or
"(b) Which is used for the unlawful keeping or sale of narcotic or dangerous drugs.”
Our analysis of this statute focuses on the nature of the "place” in which a person must remain to be in violation.
This statute originated with Oregon Laws 1935, ch 121, § 13:
"Any store, shop, warehouse, dwelling house, building, vehicle, boat, aircraft, or any place whatever, which is resorted to by narcotic drug addicts for the purpose of using narcotic drugs or which is used for the illegal keeping or selling of the same, shall be deemed a *[754] common nuisance. No person shall keep or maintain such a common nuisance.”
This was subsequently codified as ORS 474.130.
ORS 474.130 was amended by Oregon Laws 1957, ch 587, § 4, to divide the statute into subsections (1) and (2) — basically an editorial change — and to add subsection (3) — the substantive change — so the statute then read:
"(1) Any store, shop, warehouse, dwelling house, building, vehicle, boat, aircraft, or any place whatever, which is resorted to by narcotic drug addicts for the purpose of using narcotic drugs or which is used for the illegal keeping or selling of the same, shall be deemed a common nuisance and shall be abated in the manner provided in ORS 471.630 to 471.655.
"(2) No person shall keep or maintain such a common nuisance.
"(3) No person shall frequent any place if he knows it to be a place of the type described in subsection (1) of this section.”
The Criminal Law Revision Commission proposed repealing ORS 474.130(2) and (3) and enacting instead what is now codified as ORS 167.222. The history indicates that the draftsmen did not intend any change of substance. Proposed Oregon Criminal Code 265, § 277, Commentary (1970). Specifically, the Commission would have defined the crime of criminal drug promotion as applying when a person "knowingly maintains or frequents” a certain kind of place. Proposed Oregon Criminal Code 265, § 277, Commentary (1970). In response to testimony about "enforcement problems,” a Senate committee changed the Commission’s proposal to include the current statutory language, "knowingly maintains, frequents or remains at a place.” Minutes, Senate Criminal Law and Procedure Committee, March 24, 1971, pp 2-4, and March 31, 1971, p 5. As so amended, the legislature enacted ORS 167.222.
This statutory evolution indicates that the legislature has made changes in the prohibited conduct, e.g., *[755] adding "remains” to "frequents” but has been consistent about the nature of the place in which such conduct is prohibited. It is not a crime to remain in any place, but only, as most clearly stated in former ORS 474.130(3) after the 1957 amendment, a certain "type” of place. Interpreted in light of its historical antecedents set out above, we conclude ORS 167.222 prohibits knowingly remaining in a place where a principal or substantial purpose is the commercial sale or use of illegal drugs. In other words, we interpret ORS 167.222 as a modem version of the statute involved in State v. Sam, 14 Or 347, 13 P 303 (1887), which prohibited frequenting "an opium den.”
The 1935 predecessor statute applied to places "resorted to by narcotic drug addicts for the purpose of using narcotic drugs or which is used for the illegal keeping or selling of” narcotic drugs. Juxtaposed with the reference to drug addicts, the concept of places where drugs were kept or sold must have been intended to mean an ongoing course of conduct rather than a single isolated event. The current version of ORS 167.222 uses different language — replacing "drug addicts” with "drug users” — but, to repeat, was regarded by the draftsmen as the same in substance as the predecessor statute. Moreover, the most recent legislative revision — to prohibit remaining at certain places — makes the most sense if the place at which a person remains is an ongoing illegal drug operation, rather than a place where drugs are used once.
Under this analysis of ORS 167.222, evidence of a single occasion of use or sale of illegal drugs at a given place — all that is revealed by the record in this case — is insufficient as a matter of law to sustain a conviction for criminal drug promotion by knowingly remaining at that place.[4]
Reversed.

At the time material to this case, ORS 167.222 provided:
"(1) A person commits the offense of criminal drug promotion if he knowingly maintains, frequents, or remains at a place:
"(a) Resorted to by drug users for the purpose of unlawfully using narcotic or dangerous drugs; or
"(b) Which is used for the unlawful keeping or sale of narcotic or dangerous drugs.
"(2) Criminal drug promotion is a Class A misdemeanor.
"(3) Notwithstanding subsection (2) of this section, if the conviction is for knowingly maintaining, frequenting or remaining at a place where less than one avoirdupois ounce of marijuana is found at the time of an arrest under this section, criminal drug promotion is a violation punishable by a fine of not more than $100.”
ORS 167.222 has since been amended by Oregon Laws 1977, ch 745, § 35. All references in this opinion to ORS 167.222 are to the version in effect before the 1977 amendment, and we express no view on the proper interpretation of the amended version.

 E.g., State v. Jackson, 224 Or 337, 356 P2d 495 (1960); Wright v. Blue Mt. Hospital Dist., 214 Or 141, 328 P2d 314 (1958).

 Recent analogous authority supports this approach. In Brown v. Multnomah County Dist. Ct., 280 Or 95, 570 P2d 52 (1977), all of the arguments before the Supreme Court were constitutional; but the court resolved one of the issues presented by way of statutory construction, thereby not reaching the constitutional issue.

We do not reach the constitutional issues discussed in the specially concurring opinion. We only note that the term "remains” also appears throughout the burglary and criminal trespass statutes, ORS 164.205 to 164.255, and that the concurring opinion does not suggest any reason why "remains” should be struck down in one context but upheld in another.