Argued and submitted February 27, reversed and remanded
for trial November 9, 1981, reconsideration denied January 6,
petition for review allowed January 26, 1982 (292 Or 450)

STATE OF OREGON,
*Appellant,*

*v.*

DWIGHT ROBERTSON,
*Respondent.*

(No. 10-80-07971, CA 19337)

635 P2d 1057

Darryl L. Larson, Assistant District Attorney, Eugene, argued the cause for appellant. With him on the brief was J. Pat Horton, District Attorney, Eugene.

Kenneth A. Morrow, Eugene, argued the cause for respondent. With him on the brief was Morrow, McCrea & Divita, P.C., Eugene.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

WARDEN, J., dissenting opinion.

## WARREN, J.

Defendant was indicted for sodomy in the first degree and coercion in compelling another person to engage in deviate sexual intercourse. Defendant demurred to the second count of the indictment (coercion) on the ground that the indictment and the statute were unconstitutionally vague. In written memoranda the additional contention was made that the statute was unconstitutionally broad. The trial judge signed an order which sustained the demurrer, and the state appeals from that order.[1] We reverse and remand for trial.

The second count of the indictment is as follows:

"And as part of the same act and transaction as alleged in Count I herein, the defendant on or about the 14th day of November, 1978, in the county aforesaid, did knowingly and unlawfully compel and induce [the victim] to engage in deviate sexual intercourse, conduct from which she had a legal right to abstain, by means of instilling in her a fear that, if the demand was not complied with, the defendant or another person would expose a secret and publicize an asserted fact which would tend to subject [the victim] to hatred, contempt, and ridicule; contrary to statute and against the peace and dignity of the State of Oregon."

ORS 163.275 provides in relevant part:

"(1)  A person commits the crime of Coercion when he compels or induces another person to engage in conduct from which he has a legal right to abstain, or to abstain from engaging in conduct in which he has a legal right to engage, by means of instilling in him a fear that, if the demand is not complied with, the actor or another will:
"  *  *  *  *  *

"(e)  Expose a secret or publicize an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule;  *  *  *"

■ In support of the trial court's ruling on the demurrer, defendant contends the indictment and statute are overbroad in that they restrict the right of free speech protected under the First Amendment of the United States

---

[1] We have held this is an appealable order because it "sets aside" the accusatory instrument. *State v. Thomas,* 34 Or App 187, 190, 578 P2d 452, *rev den* (1978); *see* ORS 138.060(1); *but see,* ORS 135.510 specifying the grounds upon which a motion to set aside an accusatory instrument may be granted.

Constitution and under Article I, section 8, of the Oregon Constitution. Defendant suggests that "instilling * * * a fear" in someone within the meaning of the statute is a form of protected speech. In *State v. Spencer,* 289 Or 225, 229, 611 P2d 1147 (1980), speech itself was the direct object of a disorderly conduct provision, ORS 166.025(1)(c), which we found to violate Article I, section 8. Here, the statute is not *directed* at the act of communicating and in that respect is like any other criminal statute defining a crime, such as robbery, which may incidentally involve communication. Defendant also argues that speech is *indirectly* affected by the provision. He contends that the speech which is "chilled" is that involved in the threat to "expose a secret or publicize an asserted fact." What is prohibited by this particular section of the coercion statute, however, is the conduct of compelling another to act or refrain from acting by means of a promise to *forego* the threatened speech. We find no First Amendment invasion.

Defendant further asserts that the statute is overbroad because the category of threats includes threats of "insubstantial evil." *See Landry v. Daley,* 280 F Supp 938, 964 (N.D. Ill. E.D. 1968). Citation of *Landry* itself is inapposite, for the Illinois statute involved there designated the making of the threat, that is, speech, as the prohibited act; whereas, here, the conduct compelled must actually have occurred, and it is the act of coercion which is prohibited. Defendant seems to argue that the statute is "overbroad" because its scope might encompass threats made by family members, such as a threat made by a wife to publicize the fact that her husband is extremely lazy, in order to induce him to work harder. That the statute's terms could possibly have application to family members or the failure to specify the possible relationships between actor and victim does not make the statute overbroad as a matter of constitutional doctrine.

This court has stated that for due process purposes a criminal statute may not, by the vagueness of its terms, appear to encompass "socially tolerable conduct which would not reasonably have been intended to be subject to criminal sanction" as well as "anti-social conduct which was intended to be prohibited," on the rationale that such statutes fail to provide any standard by which police,

judges and juries can distinguish between innocuous and criminal acts to achieve an even application of the law. *State v. Sanderson,* 33 Or App 173, 176-177, 575 P2d 1025 (1978) (harassment too vaguely defined as "conduct that alarms or seriously annoys"); *see also, City of Portland v. Arndorfer,* 44 Or App 37, 40, 604 P2d 1279 (1980) ("closed until open" off-road vehicle ordinance found overly broad because "recreational purpose" not defined); *City of Portland v. Anderson,* 40 Or App 779, 782, 596 P2d 603 (1979) (ordinance prohibiting "interfering" with police officer not sufficiently definite); *State v. Smith (Cheryl),* 31 Or App 749, 759, 571 P2d 542 (1977) (Richardson, J., specially concurring) ("knowingly remaining" element of criminal drug promotion statute considered overbroad). In those cases the problem of the "overbreadth" of the statute was articulated in terms of adjudicability, deriving from the due process clause, an approach which is justifiable only where the statutory language is impermissibly vague. We may not reject as "overbroad" a statute in which the language is reasonably clear, absent encroachment on constitutionally protected rights. Since *Sanderson,* the Oregon Supreme Court has stated in *State v. Blocker,* 291 Or 255, 630 P2d 824 (1981), that:

" * * * a legislature can make a law as 'broad' and inclusive as it chooses unless it reaches into constitutionally protected ground. * * *

" * * * * * *

"It follows that to attack a statute as 'overbroad' necessarily implies that it impinges on some constitutionally protected right other than fair notice or 'due process.' " 291 Or at 261.

The proper extent of a statute's reach, so long as it does not invade constitutional territory, is a matter for the legislature. We have already determined that no First Amendment intrusion exists here, and no encroachment on any other constitutional right has been asserted. It follows that ORS 163.275(1)(e) is not unconstitutionally overbroad.

■  Defendant's second contention in support of the trial court's ruling is that the statute is void for vagueness:

"The language [of ORS 163.275(1)(e)] is unconstitutionally vague and violates the due process clause in that it fails to provide a standard for judicial determination of

whether an individual's conduct is criminal (*City of Portland v. James,* 251 Or 8, [13], 444 P2d 554 (1968)), and that its language is so elastic that men of common intelligence must necessarily guess at its meaning (*City of Portland v. White,* 9 Or App 239, [242], 295 P2d 778 (1972)). *State v. Sanderson,* 33 Or App 173, [176], 575 P2d 1025 [1978]."

In addition to due process concepts of standards and fair notice, the constitutional dimensions of the vagueness doctrine include the prohibition against unlawful delegation of the legislative power to define a crime, Or Const, Art III, § 1, and the prohibition against *ex post facto* laws, Or Const, Art I, § 21. *State v. Blair,* 287 Or 519, 522, 601 P2d 766 (1979); *State v. Hodges,* 254 Or 21, 27, 457 P2d 491 (1969). Furthermore, a vaguely worded criminal law invites arbitrary and discriminatory enforcement. *State v. Hodges, supra,* 254 Or at 28; *City of Portland v. James,* 251 Or 8, 13, 444 P2d 554 (1968).

Defendant argues that the statute is unduly vague because the category of threats is undefined.[2] The wording of the statute, however, is relatively precise:

"expose a secret or publicize an * * * asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule. * * * "

The phrase "subject * * * to hatred, contempt or ridicule" or similar language has been commonly used to define defamatory statements. *See, e.g., Farnsworth v. Hyde,* 266 Or 236, 238, 512 P2d 1003 (1973); Restatement (Second) of Torts § 559, Comment b (1976) ("Communications are often defamatory because they tend to expose another to hatred, ridicule or contempt.") The state argues that the statute should be read as incorporating into it the civil law of defamation, thus limiting the scope of the criminally proscribed disclosures to those that would be defamatory at civil law. Defendant, however, says that the statute cannot be so read, because it expressly makes criminal the disclosure of statements that are true; whereas, statements must be false if they are to be actionable as defamatory. That

---

[2] Defendant has not argued that the category of conduct wrongfully compelled by the threat is either too vague or overbroad. It appears from the language of the statute that inducing a completely innocuous action or one to which the victim has no serious objection, but from which he has a legal right to refrain, by means of what amounts to a threat to defame was intended by the legislature to be sanctionable as criminal coercion.

distinction does not make the statute vague. The legislative history[3] confirms that the statute was intended to describe what "amounts to" threats to defame, with the caveat that "unlike defamation actions, the truth of the matter threatened to be exposed would not constitute a defense to a prosecution under this subsection." Oregon Criminal Code of 1971, 129 § 101; 131 § 102; 171-72 § 127,[4] Commentary (1975 ed).

The statute proscribes coercion induced by threats to expose secrets or asserted facts which would be actionable as defamatory in a common law civil action and coercion by threats to expose secrets or facts which would be actionable in a common law civil action but for their truth. We find that the language of ORS 163.275(1)(e) is not so elastic that men of common intelligence must necessarily guess at its meaning, and hence we hold the provision is not void for vagueness.

Reversed and remanded for trial.

**WARDEN, J.,** dissenting.

Because I am satisfied that the trial judge was correct in finding ORS 163.275 unconstitutionally vague, I would affirm and therefore, respectfully dissent.

---

[3] We look to legislative history in this context only for an additional gloss on *express statutory language. Compare* the suggestion in *State v. Sanderson,* 33 Or App 173, 178, 575 P2d 1025 (1978), that legislative history might be utilized to fill in *gaps of constitutional magnitude* by judicial interpretation of vague statutory language, with the recognition in *State v. Blair,* 287 Or 519, 522, 601 P2d 766 (1979), and *State v. Hodges,* 254 Or 21, 27-28, 457 P2d 491 (1969), that such *subsequent* interpretation of unduly vague criminal statutes allows laws to be defined after the fact by non-legislators, in violation of the due process clause and the Oregon Constitution.

[4] The Oregon Criminal Law Revision Committee considered the threats which form the basis of the offense of coercion to be equivalent to those considered in the related provision on theft by extortion, ORS 164.075. The commentary on theft by extortion explains:

"Paragraph (e) amounts to a threat to defame. Unlike defamation action, the truth of the matter threatened to be exposed would not constitute a defense to a prosecution under this subsection. The prohibition is directed against 'selling' forbearance from defamation and not against the publication of defamation itself. It is emphasized, however, that the subsection is not intended to make it criminal to conduct legitimate negotiation or to agree to settlement of an asserted claim as consideration for a promise to forbear from civil litigation." Oregon Criminal Code of 1971, 171 § 127, Commentary (1975 ed).

In *State v. Blocker,* 291 Or 255, 630 P2d 824 (1981), the Supreme Court summarized the constitutional underpinnings of the vagueness doctrine:

> " 'Vagueness' means that a penal law is stated in terms from which those to whom it is addressed—potential defendants, prosecutors, courts, and jurors—cannot discern what conduct the lawmaker did or did not mean to include in the prohibition. Such a failure of communication in penal laws has been held to contravene article I, section 21 of the Oregon Constitution because 'they not only allow a court or a jury to define a crime but to do so after the fact,' *Megdal v. Board of Dental Examiners,* 288 Or 293, 298, 605 P2d 273 (1980), *citing State v. Blair,* 287 Or 519, 601 P2d 766 (1979); *State v. Hodges,* 254 Or 21, 457 P2d 491 (1969), and to deny due process under the Fourteenth Amendment because they do not give fair notice of what they proscribe. *See,* sources cited in *Megdal,* 288. Or at 299 and note 5." 291 Or at 260.

In *State v. Sanderson,* 33 Or App 173, 176, 575 P2d 1025 (1978), we found that the language of a statutory provision defining the offense of harassment was over-general in that the phrase "conduct that alarms or seriously annoys another person" gave no basis to distinguish between antisocial conduct which was intended to be prohibited and socially tolerable conduct which could not reasonably have been intended to be subject to criminal sanction. Here, the language of the statute is such that it does not provide a basis for distinguishing between innocuous and criminal acts of coercion. The statute on its face is impermissibly vague.

We have a duty to construe statutes to preserve their constitutionality where that is possible. *State v. Smith (Cheryl),* 31 Or App 749, 751, 571 P2d 542 (1977). "A vaguely worded statute will not be held void if it is susceptible to a limiting construction which will relieve it of constitutional infirmity." *State v. Sanderson, supra,* 33 Or App at 177. The sources of such construction are legislative history or prior judicial interpretation. In *Sanderson,* there was no prior judicial interpretation of the statute and the legislative history did not allow us to limit the statute.

There is no prior judicial interpretation of ORS 163.275(1)(e). The legislative history likewise is not helpful. The threats which form a basis for the offense of

coercion were considered equivalent to those contained in the related provision on theft by extortion. Oregon Criminal Code of 1971, 129 § 101; 131 § 102; 171-72 § 127, Commentary, (1975 ed). The commentary on theft by extortion explains:

"Paragraph (e) amounts to a threat to defame. Unlike defamation actions, the truth of the matter threatened to be exposed would not constitute a defense to a prosecution under this subsection. The prohibition is directed against 'selling' forbearance from defamation and not against the publication of defamation itself. It is emphasized, however, that the subsection is not intended to make it criminal to conduct legitimate negotiation or to agree to settlement of an asserted claim as consideration for a promise to forbear from civil litigation."

Whatever may have been the intent of the Criminal Law Review Commission, it is clear that the category of threats referred to in the statute is much broader than that of defamatory statements, because the asserted fact may be true for the purpose of coercion, whereas it must be false for the purpose of defamation. The category of threats would perhaps more accurately be described as incorporating those which would constitute the tort of invasion of privacy, but that does not find support in the legislative history. Inducing, even by a threat to defame, a completely innocuous action or one to which the victim has no serious objection, but from which he has a legal right to refrain, may not have been intended by the legislature to be sanctionable as criminal behavior. But we cannot determine that question from the face of the statute.

The problem with ORS 163.275 is that it applies to matters which it is doubtful the legislature meant to proscribe, as well as those which it clearly did. On its face, this statute would apply to a newspaper reporter who advises a public official, *e.g.,* a legislator, county commissioner or city councilman, that if the public official votes in favor of a matter which is before the public body of which he is a member, the reporter will publish the fact that the public official will derive some gain from the public body's action. This statute leaves the reporter with the alternatives of going to the public official and risking prosecution and punishment for the crime of coercion or waiting to see what the public official does and, then, if the public official does

vote his private interest, proceeding to publish the fact. Whether the reporter would, in fact, be prosecuted and punished is left up to the particular prosecutor, judge, or jury. The statute, again, on its face, does not except from its proscription acts which may be coercive, but which have historically been protected under family rights to privacy.[1]

When is a threat to disclose a secret unjustifiable or inexcusable and when is the potential for harm substantial? To permit a prosecutor, a judge or jury to decide these questions allows the crime itself to be redefined case by case after the fact, which is prohibited under Article I, section 21, of the Oregon constitutional provision governing *ex post facto* laws. *See State v. Hodges,* 254 Or 21, 27, 457 P2d 491 (1969) (statute defining offense of contributing to delinquency of minors held to be unconstitutionally vague). I conclude that it is not possible to limit ORS 163.275(1)(e) by construction to cure its vagueness.

The Oregon Supreme Court has expressed doubt that the problem of statutory vagueness can be avoided by reference to the conduct involved in a particular case. *See Megdal v. Board of Dental Examiners,* 288 Or 293, 299, n 5, 605 P2d 273 (1980). The inquiry is whether or not the conduct described in a given case falls as a matter of law within even the most restricted reading of the prohibition. *See State v. Sanderson, supra,* 33 Or App at 177. This approach, however, retains the constitutional defect noted in *State v. Blocker, supra,* and *State v. Hodges, supra;* that is, the crime is defined after the fact by nonlegislators.

The statute is unconstitutionally vague on its face. Defendant's demurrer was properly sustained. I would affirm.

---

[1] Husband and wife have a heated argument over husband's coming home from a saloon in the early morning hours, pounding on the door of the house, waking wife up and insisting on being admitted to the house. Wife threatens husband that if it happens again she will not admit him to the house. Husband arrives home the next night at 2 a.m., pounds on the door and demands admission. Wife, from an upstairs window, shouts to husband, "I told you that if you came home late again after drinking and woke me up by pounding on the door that I would not let you in. Go sleep in the woodhouse." Husband says, "If you don't let me in, I'm going to tell everyone in the neighborhood that I slept with you before we were married." (Coercive under the terms of ORS 163.275.) Wife retaliates, "You do, and I'll tell them you wasn't the only one." (Again, coercive and prosecutable under ORS 163.275.)