Argued and submitted February 24, reversed and remanded April 20, 1988

STATE OF OREGON,
*Appellant,*

*v.*

CARL NELS PYRITZ,
*Respondent.*

(B70-470; CA A44954)

752 P2d 1310

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Robert Homan, Eugene, argued the cause for respondent. On the brief was Richard Smurthwaite, Public Defender Services of Lane County, Inc., Eugene.

Before Warden, Presiding Judge, and Van Hoomissen and Graber, Judges.

GRABER, J.

## GRABER, J.

Defendant was accused of violating ORS 167.222, which prohibits "frequenting a place where controlled substances are used." The complaint charged that defendant "did unlawfully and knowingly frequent and remain at [a specified] place where the defendant knowingly permitted persons to use, keep and sell illegal controlled substances * * *." Defendant demurred on the basis that ORS 167.222(1) is unconstitutionally vague and overbroad on its face, under both the Oregon and United States Constitutions. The trial court held that ORS 167.222(1) is too vague under the Oregon Constitution and, accordingly, sustained the demurrer. The state appeals; we reverse.

■ We must first examine defendant's state constitutional claims, and we need reach his federal theories only if his state claims fail. *State v. Kennedy,* 295 Or 260, 262-65, 666 P2d 1316 (1983). A demurrer on constitutional grounds is sustainable if the statute is vague or overbroad on its face. *State v. Horn,* 57 Or App 124, 128, 643 P2d 1338 (1982).

Defendant's first argument is that the statute is vague. The Supreme Court has stated the standard for specificity of a criminal statute:

"The terms of a criminal statute must be sufficiently explicit to inform those who are subject to it of what conduct on their part will render them liable to its penalties. *State v. Hodges,* 254 Or 21, 27, 457 P2d 491 (1969). In addition to its function of giving fair notice of the forbidden conduct, [a] criminal statute must not be so vague as to permit a judge or jury to exercise uncontrolled discretion in punishing defendants, because this offends the principle against *ex post facto* laws embodied in Article I, section 21, of the Oregon Constitution. *Id.* The equal privileges and immunities clause is also implicated when vague laws give unbridled discretion to judges and jurors to decide what is prohibited in a given case, for this results in the unequal application of criminal laws. *See State v. Robertson,* 293 Or 402, 408, 649 P2d 569 (1982). A criminal statute need not define an offense with such precision that a person in every case can determine in advance that a specific conduct will be within the statute's reach. However, a reasonable degree of certainty is required by Article I, sections 20 and 21." *State v. Graves,* 299 Or 189, 195, 700 P2d 244 (1985). (Footnote omitted.)

*See also* ORS 161.025(1)(c); *State v. Cornell/Pinnell,* 304 Or 27, 29, 741 P2d 501 (1987). Even if the words of the statute are vague, the inquiry is not at an end:

> "When a statute is attacked as vague, for failing to define and communicate its coverage, the statute sometimes can be saved by a judicial interpretation that gives it the required definiteness. It is the court's obligation to do so when this can be done without departing too far from what the legislature sought to accomplish or what the statute itself can convey to a reader." *State v. Robertson, supra,* 293 Or at 411.

We applied that principle in holding that the predecessor of ORS 167.222(1) was constitutional. *State v. Smith,* 31 Or App 749, 755, 571 P2d 542 (1977).[1]

ORS 167.222(1) provides:

> "A person commits the offense of frequenting a place where controlled substances are used if the person keeps, maintains, frequents, or remains at a place, while knowingly permitting persons to use controlled substances in such place or to keep or sell them in violation of ORS 475.005 to 475.285, 475.940 to 475.965 and 475.991 to 475.995."

The operative words about which defendant complains are "frequents," "remains," and "knowingly permitting."

"Frequents" is defined by statute to mean "repeatedly or habitually visits, goes to or resorts to." ORS 167.222(4). The standard dictionary definition of "repeated" is "occurring again and again." *American Heritage Dictionary* (New College ed.) 1103; *see also State v. Diede,* 319 NW2d 818, 821-22 (S Dak 1982). "Habitually" means customarily or by regular usage or a course of dealing. *Marks v. Herren,* 47 Or 603, 607-09, 83 P 385 (1905); *see also* OEC 406.

"Knowingly" is also defined by statute:

> " 'Knowingly' or 'with knowledge,' when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists." ORS 161.085(8).

---

[1] The current version of ORS 167.222, at issue here, is materially different from the predecessor considered in *State v. Smith, supra.* The court in *Smith* was aware of the amended statute and expressed no view about it. 31 Or App at 751 n 1. The current version, unlike the old one, requires that the defendant "knowingly permit" others to use, keep, or sell controlled substances.

That is the "culpable mental state" the legislature has chosen to impose for this crime. ORS 161.085(6).

"Remains" and "permitting" are not defined by statute. That being so, we apply the plain and ordinary meaning of the words. *Perez v. State Farm Mutual Ins. Co.*, 289 Or 295, 299, 613 P2d 32 (1980). To remain is simply to stay. *American Heritage Dictionary* (New College ed.) 1099.

■■ The most troublesome of the words at issue is "permit." This court has used the following definition in analyzing other criminal conduct:

> " '[O]ne cannot be said to have permitted a thing of which he has no knowledge or means of knowledge, so, that, if his animals escape from his enclosure without his knowledge or negligence, he does not come within the prohibitions of the statute against "permitting" his stock to be at large. *To "permit" means to allow by tacit consent or by not hindering, taking no steps to prevent, or to grant leave by express consent or authorization.*' " *Lemery v. Leonard*, 99 Or 670, 678, 196 P 376 (1921) *quoted in State v. Kelso*, 70 Or App 393, 396, 689 P2d 1307 (1984). (Emphasis supplied.)

Implicit in *Kelso* and the cases it cites is the fact that the person who "permitted" stock to run at large had the authority to fence them in. *Kelso* speaks of "his animals" escaping from "his enclosure." In ORS 167.222, "permitting" means that one who, (1) having legal authority over persons who use, keep, or sell illegal controlled substances, at the specified place where the defendant frequents or remains, (2) uthorizes or consents to such use, possession, or sale.[2] This definition of "permit" merely makes express what was implied in earlier cases defining "permit": Before one can be said to "permit" something, one must have authority to forbid it.

Because each word is defined or definable with a reasonable degree of certainty, neither ORS 167.222(1) as a whole nor any word in it gives a judge or jury unbridled discretion to decide what conduct is criminal. Accordingly, the statute is not impermissibly vague under the Oregon Constitution.

Defendant also contends that ORS 167.222(1) is overbroad, because it reaches conduct protected by Article I,

---

[2] *American Heritage Dictionary, supra* 977, defines "permit," in part, as "to give consent; authorize."

sections 8, 9, 20, 21, and 26 of the Oregon Constitution. *State v. Robertson, supra,* 293 Or at 410.

■       Article I, section 8, protects speech. Although speech may be the means by which one expresses permission, ORS 167.222(1) does not punish speech. Rather, it is the physical act of keeping, maintaining, frequenting, or remaining—when combined with the act of consenting to illegal drug use, possession, or sale by a person over whom one has legal control—that is prohibited. The statute is not directed at, and only incidentally involves, speech. It does not violate Article I, section 8. *State v. Robertson, supra,* 293 Or at 414-15; *State v. Anderson,* 56 Or App 12, 14, 641 P2d 40 (1982).

Article I, section 9, prohibits unreasonable searches and seizures. Nothing in ORS 167.222(1) touches a right protected by that section.

Article I, section 20, grants equal privileges and immunities to all citizens; Article I, section 21, precludes *ex post facto* laws. Those sections provide a foundation for the analysis of vagueness, but they do not describe constitutionally protected activity that is reached by ORS 167.222(1).

■       Finally, Article I, section 26, relates to "assemblages of people" and provides, in relevant part:

"No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good * * *."

As we have construed it, ORS 167.222(1) does not embrace a *protected* right of association. Article I, section 26, does not create or protect a right to permit others, over whom one has legal authority, to break the law by using or selling controlled substances.

In short, as construed above, ORS 167.222(1) does not reach conduct that is protected under the Oregon Constitution.

Because defendant's state law challenge fails, we consider his federal claims. His first argument is, again, that ORS 167.222(1) is impermissibly vague. Although phrased in slightly different terms, the federal and Oregon standards coincide for present purposes. *See Kolender v. Lawson,* 461 US 352, 358, 103 S Ct 1855, 75 L Ed 2d 903 (1983); *Screws v.*

*United States,* 325 US 91, 98, 65 S Ct 1031, 89 L Ed 1495 (1945). We reject defendant's void-for-vagueness argument under the federal constitution for the same reasons that we rejected it under the Oregon Constitution.

Defendant's final argument is that ORS 167.222(1) covers conduct protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution. Like the Oregon rule, the federal overbreadth standard bars statutes that encroach upon constitutionally protected activity. ORS 167.222 clearly applies to constitutionally proscribable conduct. Therefore, defendant must show that the statute *as applied to him* is unconstitutionally overbroad and that the infringement of his rights is *substantial. Secretary of State of Maryland v. J. H. Munson Company,* 467 US 947, 965, 104 S Ct 2839, 81 L Ed 2d 786, (1984). Invalidation of a statute for overbreadth is "strong medicine" and should be a last resort. *Broadrick v. Oklahoma,* 413 US 601, 613, 93 S Ct 2908, 37 L Ed 2d 830 (1973). That standard is more stringent than Oregon's.

■ The First Amendment protects rights of speech, assembly, petition for the redress of grievances, and exercise of religion. The Supreme Court has termed these First Amendment rights of association "expressive association." *Roberts v. United States Jaycees,* 468 US 609, 622, 104 S Ct 3244, 82 L Ed 2d 462 (1984). As we construe it, ORS 167.222(1) does not infringe on constitutionally protected "expressive association" rights. The statute does not punish expression. Rather, it punishes only one who has authority to prohibit another from using or selling illegal substances and nonetheless authorizes that person to use or sell them. There is no federal associational right, for example, knowingly to permit others to use cocaine in one's home. ORS 167.222(1) does not violate the First Amendment.

The Fourth Amendment prohibits unreasonable searches and seizures. Nothing in ORS 167.222(1) implicates that amendment.

The Fourteenth Amendment protects due process rights, including "liberty." One aspect of liberty is the right to associate with persons of one's choice. The United States Supreme Court has termed this the right of "intimate association." *See, e.g., Roberts v. United States Jaycees, supra,* 468 US at 618-20, and cases cited therein. The right applies only to

highly personal relationships. *Roberts v. United States Jaycees, supra,* 468 US at 618; *see also Zablocki v. Redhail,* 434 US 374, 98 S Ct 673, 54 L Ed 2d 618 (1978); *Moore v. East Cleveland,* 431 US 494, 97 S Ct 1932, 52 L Ed 2d 531 (1977). No such relationship is involved here.[3] The statute does not violate the Fourteenth Amendment. Defendant's challenge to ORS 167.222(1) under the United States Constitution fails.

Reversed and remanded.

---

[3] Even where a highly personal relationship is involved (such as between parent and minor child), one's liberty interests do not include the right to authorize criminal conduct.