Argued and submitted January 21, judgment affirmed in part and reversed in part
June 2, 1999

## STATE OF OREGON,
*Respondent,*

*v.*

## SANDY L. EVANS
## and Walter Errol Evans,
*Appellants.*

(97R1247, 97CR1246; CA A100224 (Control), A100240)
(Cases Consolidated)

983 P2d 1055

Robert J. McCrea argued the cause for appellants. With him on the brief was McCrea, P.C.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

### LINDER, J.

In a consolidated jury trial, defendants Walter and Sandy Evans each were convicted of one count of unlawful possession of a controlled substance, ORS 475.992, and one count of frequenting a place where controlled substances are used, ORS 167.222. They appeal, challenging the trial court's denial of their motion to suppress evidence seized during execution of a search warrant, contending that the warrant was not supported by probable cause and that the plain view exception to the warrant requirement did not apply. Sandy Evans also challenges the trial court's denial of her motion for judgment of acquittal, contending that the evidence was insufficient to support the verdict. Without further discussion, we reject defendants' arguments regarding the ruling on their motion to suppress evidence. We therefore affirm Walter Evans's convictions. However, we agree that the evidence is insufficient to support Sandy Evans's convictions, and we reverse that judgment.

On March 24, 1997, authorities searched the residence at 4011 Barview Boulevard, Coos Bay, Oregon, pursuant to a search warrant that named Walter Evans. Neither Walter Evans nor Sandy Evans was present when the search took place. During the search, officers seized an empty plastic bag containing white residue that later tested positive for the presence of methamphetamine. The bag was found in a dresser drawer in the master bedroom. One of the searching officers observed "jewelry, earrings, that type of thing" on top of the dresser. He also found clothing in the dresser. As part of their search, the officers looked for items suggesting "domicile and control" of the residence. Despite an extensive search of the premises lasting from approximately 9:30 a.m. to 5:55 p.m., the only item seized suggesting that Sandy Evans resided at the location was an empty envelope found in the living room. The envelope was hand-addressed to "Walter and Sandy Evans" at the address of the searched residence and bore a return address from Farmers Insurance.

After the state's case-in-chief, defendant Sandy Evans moved for a judgment of acquittal, arguing that the

evidence was insufficient to connect her either with the residence or to the drugs seized in the residence . The trial court denied the motion, stating:

"Well, I'll have to agree it's really pretty skinny. I've never seen one quite this skinny, but I don't know if it's up to the Court to make a judgment on this.

"I'm going to let it go to the jury. I'll deny your motion."

Defendant[1] assigns error to that denial. In testing the evidence for sufficiency, we view the evidence in the light most favorable to the state to determine whether any rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den* 514 US 1005 (1995); *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989).

■     Under ORS 475.992(4), "[i]t is unlawful for any person knowingly or intentionally to possess a controlled substance." Here, the state presented no evidence that defendant actually possessed the methamphetamine found in the dresser drawer. The issue, therefore, is whether there is sufficient evidence to support a finding that defendant constructively possessed the controlled substance. To prove constructive possession, the state must prove that a defendant knowingly exercised control over, or had the right to control, the contraband. *State v. Garcia*, 120 Or App 485, 487-88, 852 P2d 946 (1993). Evidence that contraband is found in quarters owned or occupied by a defendant can be sufficient to allow the inference that he or she has a right to control that contraband. *State v. Bauer*, 128 Or App 598, 601, 876 P2d 802 (1994).

The evidence here is meager. The state relies on: (1) the officer's observation of jewelry, earrings, and similar items on top of the dresser in which the methamphetamine was found; (2) the character of the clothing in the dresser where the drugs were found; and (3) the envelope addressed to "Walter and Sandy Evans" at the address searched that

---

[1] Because the only issue we discuss is the ruling on defendant Sandy Evans's motion for judgment of acquittal, our references to "defendant" in the singular throughout the remainder of the opinion refer to her.

was found on the premises. According to the state, because there was no evidence to suggest that anyone other than Walter and Sandy Evans lived at the searched premises, a rational juror could conclude from the envelope and the contents of the dresser that defendant was married to Walter Evans, that she lived with him at that address, that she shared the master bedroom with him, that she shared joint possession and control of the dresser where the methamphetamine was found, and that she knew about the presence of the residue-covered plastic bag.

■ The evidence that the state points to simply will not bear the weight of the inferences the state needs. The first two items that the state relies on are not even accurately described by the state, at least not on the record before us. Although the state characterizes the jewelry and similar items on top of the dresser as "feminine" in nature, the officer who observed them did not describe them as such. Nor do the photographs of the top of the dresser that were admitted into evidence and examined by the jury permit that conclusion. Indeed, based on our review of the photographs, it is difficult to identify the objects on the dresser as jewelry at all, let alone as a woman's jewelry.

Similarly, the state contends that the officer searching the dresser described it as containing "clothing that was consistent with what a female would wear." That is an overly generous description of the officer's testimony. What the officer actually said was that the clothing was of a kind that either a male or female would wear. When asked if the dresser contained "women's clothing," the officer specifically replied "I would not say that." Instead, he recalled that the dresser contained sweatshirts and "clothing that would be either sex, male, female, anyone could wear * * *."

In and of themselves, the nondescript items observed on and in the dresser where the drugs were found support no particular inference about the gender or identity of the person who used the dresser. They do not make it more likely than not that any woman used that dresser; they certainly do not tend to prove beyond a reasonable doubt that a particular woman—defendant Sandy Evans—had control over the area, joint or otherwise.

The state's only other evidence was the envelope hand-addressed to "Walter and Sandy Evans" at the address of the searched residence, postmarked six days before the search, with a return address from Farmers Insurance. When police found it, the envelope was empty; there was nothing inside to demonstrate that it was sent from Farmers Insurance in a business capacity. That solitary envelope falls far short of providing an adequate evidentiary basis for a reasonable jury to conclude that defendant in fact resided at the searched residence and further had control over the area in which the methamphetamine was found.

Nor is the evidence sufficient to support defendant's conviction for frequenting a place where controlled substances are kept.[2] The indictment charged defendant with committing that crime by "knowingly remaining at a place while knowingly permitting persons to use said place to keep controlled substances." For the same reasons that a rational finder of fact, on this record, could not conclude beyond a reasonable doubt that defendant occupied the premises and had constructive possession of the drugs in it, a rational finder of fact could not conclude that defendant stayed at the residence, had the authority to permit others to keep the drugs there, and consented to their doing so. *See generally State v. Pyritz*, 90 Or App 601, 752 P2d 1310 (1988) (examining elements of frequenting a place where controlled substances are kept).

Judgment as to defendant Walter Evans affirmed; judgment as to defendant Sandy Evans reversed.

---

[2] ORS 167.222, in relevant part, provides:

"(1)  A person commits the offense of frequenting a place where controlled substances are used if the person keeps, maintains, frequents, or remains at a place, while knowingly permitting persons to use controlled substances in such place or to keep or sell them * * *.

"* * * * *

"(4)  As used in this section, 'frequents' means repeatedly or habitually visits, goes to or resorts to."