No. 410 June 20, 2024 283

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KELLY RENEE MARCUM,
*Defendant-Appellant.*

Yamhill County Circuit Court
21CR07720; A177476

John L. Collins, Judge.

Argued and submitted October 25, 2023.

Kelly Tedeschi-Bowman argued the cause for appellant. On the brief was Kenneth A. Kreuscher.

Erica L. Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

On appeal from a judgment of conviction under
ORS 167.222(1), which makes it an offense to frequent a
place where controlled substances are used, defendant
assigns error to the trial court's denial of her motion for
judgment of acquittal (MJOA). Defendant asserts that the
state failed to provide sufficient evidence of two elements
of the crime.[1] First, defendant argues that the state failed
to provide sufficient evidence that she lived at the house in
question, and thus, she did not have the legal authority nec-
essary to permit illegal drug use in the house. Second, she
argues that the state failed to provide sufficient evidence
that the commercial sale or use of illegal drugs was a prin-
cipal or substantial purpose of the house. We reject both
arguments and affirm the trial court's denial of the MJOA,
but we write to establish that when determining whether
the commercial sale or use of illegal drugs is a principal or
substantial purpose of a place under ORS 167.222(1), rel-
evant factors include "the nature of the activity, its dura-
tion or frequency, and the degree to which the activity is an
incidental, brief, spontaneous, or isolated occurrence in the
particular place, or conversely, the degree to which it has
become a quality or characteristic of the place itself." *State
v. Gonzalez-Valenzuela*, 358 Or 451, 473, 365 P3d 116 (2015).
In this case, although we acknowledge that defendant and
her family resided in the home, and that residence was a
principal purpose, we conclude that the evidence was suf-
ficient to support a finding that defendant's home was also
a place where a principal or substantial purpose was the
commercial sale or use of illegal drugs.

We review the trial court's denial of an MJOA for
the sufficiency of the evidence to support a verdict. *State v.
Cunningham*, 320 Or 47, 61-62, 880 P3d 431 (1994), *cert den*,
514 US 1005 (1995). The evidence was sufficient if, when
viewing the facts in the light most favorable to the state
and accepting reasonable inferences, the state presented

---

[1] ORS 167.222(1) states, in relevant part:

"A person commits the offense of frequenting a place where controlled
substances are used if the person keeps, maintains, frequents, or remains at
a place, while knowingly permitting persons to use controlled substances in
such place ***."

evidence from which a rational juror "could find the essential elements of the crime beyond a reasonable doubt." *State v. Hedgpeth*, 365 Or 724, 730, 452 P3d 948 (2019).

The facts relevant to this appeal fall into two categories: (1) evidence that defendant lived in the house, and (2) evidence that a principal or substantial purpose of the house was the use of illegal drugs.

The state offered evidence that defendant's husband and her two adult sons lived in the house (two of whom were present when officers searched the home). The state also presented evidence that an officer saw defendant enter and exit the house multiple times in the weeks prior to the search. During the search, police found multiple items with defendant's name on them, including a copy of one side of defendant's Social Security card, a prescription pill bottle, and pawn shop slips.

On the issue of drug use, the state offered evidence that in nearly every room of the house, police found items indicative of recent drug use. The evidence included pieces of burned aluminum foil, much of it containing drug residue, on various surfaces in the dining room, kitchen, and one of the adult children's bedrooms. In addition to the aluminum foil, the kitchen, dining room, and primary bedroom contained used or broken glass pipes. In the dining room and another bedroom, officers found what they believed to be usable quantities of heroin and methamphetamine.

Defendant moved for a judgment of acquittal on the basis that the state failed to provide sufficient evidence of two elements of the crime of frequenting a place where controlled substances are used. The trial court denied defendant's motion, concluding that the state had provided sufficient evidence for a reasonable juror to find that defendant had legal authority to permit illegal drug use at the house, and that the illegal drug use was a principal or substantial purpose of the house. Defendant filed this timely appeal.

On appeal, defendant argues that the state failed to present sufficient evidence of two elements of the crime: (1) that she had the legal authority to permit illegal drug use in the house, and (2) that illegal drug use was a principal

or substantial purpose of the house. On the first element, defendant asserts that evidence that she was married to one of the residents of the house, was seen at the house, and had multiple possessions bearing her name in the house, was insufficient for a rational juror to conclude beyond a reasonable doubt that she lived there, and thus, had legal authority over the house. On the second element, defendant argues that to qualify as a location where a principal or substantial purpose is the commercial sale or use of illegal drugs, ORS 167.222(1) requires nonresidents to frequent the house to buy or use illegal drugs. Requiring nonresidents to visit the location, defendant argues, is more consistent with the legislative intent behind ORS 167.222(1) to address locations deemed to be drug houses or "opium dens." The state did not present evidence of nonresidents visiting the house to sell or use illegal drugs.

Interpreting ORS 167.222(1), we have previously held that the crime occurs when "a person with the legal authority over the location *** knowingly permit[s], through affirmative or tacit authorization or consent, the use, possession, or sale of *** controlled substances at the location where a principal or substantial purpose is the commercial sale or use of illegal drugs." *State v. Van Osdol*, 290 Or App 902, 915, 417 P3d 488 (2018). The fact that a person is a resident can be enough to establish the person has the necessary legal authority to permit illegal drug use under the statute. *See id.* at 917 (concluding that only the defendant had legal authority over the house listed in the affidavit because he resided there and the two suspected drug dealers that had visited the property did not). Although the state argues that the doctrine of common authority applies here to establish defendant's legal control over the residence,[2] we need not decide whether to extend the common authority doctrine to this statute because, for the purpose of permitting illegal

---

[2] The state relies on a series of cases that protect the right to be free from unreasonable searches and seizures under the Fourth Amendment by holding that third parties must have common authority over the area being searched to permit police to search the area on behalf of another resident or owner. *See, e.g.*, *State v. Lambert*, 134 Or App 148, 150, 894 P2d 1189 (1995). Common authority necessarily applies when another occupant is permitting behavior on another's behalf. Because defendant is a resident, is the person charged, and is the person permitting the illegal activity, common authority does not apply.

drug use, it is sufficient to establish that the defendant is a resident of the location. *See id.* In other words, the evidence that defendant lived at the location, in combination with other factors, such as the evidence of drug use in her adult child's bedroom and throughout the house, was sufficient to show that defendant had the legal authority to knowingly permit illegal drug use at the location.

Turning to the second element at issue in this case, ORS 167.222(1) requires that the commercial sale or use of illegal drugs is a "principal or substantial purpose" of the location. *Id.* at 915. Beyond the example that "a single occasion of use or sale of illegal drugs at a given place * * * is insufficient as a matter of law to sustain a conviction" for frequenting, *State v. Smith*, 31 Or App 749, 755, 571 P2d 542 (1977), we have not yet interpreted the statute to define what conduct or evidence is sufficient to determine that a location's "principal or substantial purpose" is the commercial sale or use of illegal drugs under ORS 167.222(1).

When reviewing ORS 163.575(1)(b),[3] a child-endangerment statute that prohibits similar activity, the Supreme Court concluded "that the legislature intended subsection (b) of the child-endangerment statute to be defined in reference to the criminal nuisance standards for drug houses," such as those enforced under ORS 167.222(1). *Gonzalez-Valenzuela*, 358 Or at 473. Specifically, the Supreme Court interpreted "the phrase 'a place where unlawful activity involving controlled substances is maintained or conducted'" to mean "a place where a principal or substantial use of the place is to facilitate unlawful drug activity." *Id.* (quoting ORS 163.575(1)(b)). The court further held that in determining whether unlawful drug activity qualifies as a principal or substantial purpose of a place, we consider "the nature of the activity, its duration or frequency, and the degree to which the activity is an incidental, brief, spontaneous, or isolated occurrence in the particular place, or conversely, the degree to which it has become a quality or characteristic of the place itself." *Id.* We conclude that

---

[3] ORS 163.575(1)(b) provides that a person commits the offense of endangering the welfare of a minor if the person knowingly "[p]ermits a person under 18 years of age to enter or remain in a place where unlawful activity involving controlled substances or cannabis is maintained or conducted[.]"

the analysis that the Supreme Court set forth in *Gonzalez-Valenzuela* is the appropriate test for a jury to determine whether the commercial sale or use of illegal drugs was a principal or substantial purpose of a location under ORS 167.222(1).

In adopting this approach, we reject defendant's contention that the statute requires evidence of nonresidents using the location for the commercial sale or use of illegal drugs. Defendant correctly asserts that ORS 167.222(1) was enacted to address locations like "opium dens," *Van Osdol*, 290 Or App at 914-15, but incorrectly defines an opium den as "a place that is used by non-residents and visitors when using drugs." The requirement that nonresidents use a place for the sale or use of illegal drugs is not supported by the legislative history or our case law. *See State v. Ah Sam*, 14 Or 347, 347-48, 13 P 303 (1887) (discussing Oregon's historical opium den statute which defined an opium den as "[a]ny building where opium is sold for the purpose of being smoked on or about the premises, *or where the same is smoked*." (emphasis added; internal quotation marks omitted)); *see also Smith*, 31 Or App at 754-55 (interpreting a prior version of the statute, and its legislative history, and determining that it "prohibits knowingly remaining in a place where a principal or substantial purpose is the commercial sale or use of illegal drugs"). In any case, such an interpretation would run afoul of the Supreme Court's holding in *Gonzalez-Valenzuela*, which we find persuasive on this issue, because it does not require the presence of nonresidents. *See* 358 Or at 473. Of course, while not required, the presence of nonresidents may speak to the nature of the activity and the degree to which it has become a characteristic of the location. Thus, the presence of nonresidents at the house to use or sell illegal drugs might weigh in favor of finding that that activity was a principal or substantial purpose of the house, but it is not required.

Applying the law to the facts, we hold that the state presented sufficient evidence from which a rational juror could conclude beyond a reasonable doubt that defendant had legal authority over the house because she resided there. A rational juror could also conclude beyond a reasonable doubt

that the illegal use of drugs was a principal or substantial purpose of the house.

As explained previously, under the circumstances here, the jury need only conclude that defendant was a resident of the house to have legal authority over it. The state presented evidence that defendant's husband and two adult sons resided at the house. She was seen entering and leaving the house on multiple occasions with other occupants. During the search, police also found several uniquely personal items with her name on them in the house. Taken together, this evidence was sufficient for a rational juror to reasonably infer that defendant resided at the house. And because a jury could conclude she was a resident, she also had the legal authority to permit, through affirmative or tacit authorization, the use and possession of controlled substances in the house.

Finally, the evidence of drug use throughout the entire home was sufficient for a rational juror to conclude beyond a reasonable doubt that a principal or substantial purpose of the house was the use of illegal drugs. The amount of aluminum foil and glass pipes with drug residue from both methamphetamine and heroin that occupants left in various rooms in the home indicated a relatively long duration and high frequency of drug use. The drug use was not incidental, brief, spontaneous or isolated. Instead, the fact that drug paraphernalia was found on most surfaces in the house suggested that the drug use had become a characteristic of the house itself. While we understand that this family lived in this home, and thus, shelter was one of its principal purposes, the evidence of drug use in the house was so pervasive that a jury could conclude that the occupants' drug use was also a principal or substantial purpose.

Because a rational juror could conclude that the defendant had the legal authority necessary to permit illegal drug use that could be considered a principal or substantial purpose of the house, we affirm.

Affirmed.