Submitted November 25, 2013, affirmed April 8, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRIAN KELLY LUXFORD,
*Defendant-Appellant.*

Lane County Circuit Court
201107579; A149336

347 P3d 350

Peter Gartlan, Chief Defender, and Mary M. Reese, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Doug M. Petrina, Senior Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Defendant appeals a judgment of conviction for one count of fourth-degree assault, ORS 163.160; one count of fourth-degree assault constituting domestic violence, ORS 163.160; one count of interfering with making a report, ORS 165.572; and two counts of coercion, ORS 163.275.[1] He assigns error to the trial court's denial of his motion for a judgment of acquittal (MJOA) regarding the count of coercion that involved a set of car keys. Defendant contends that the trial court erred because the state had to prove that he had compelled the victim to "engage in conduct from which [the victim had] a legal right to abstain," ORS 163.275, and the evidence showed that the victim lacked the right to retain the keys that defendant had demanded the victim to give to him. We conclude that the state presented sufficient evidence to support a finding that defendant and the victim had an equal right to possess and use the car to which the keys related and, in turn, an equal right to possess and use the keys. Hence, the trial court did not err in denying defendant's MJOA. Defendant raises additional assignments of error that we reject without written discussion. We accordingly affirm the judgment.

Because we are reviewing the trial court's denial of an MJOA, we state the facts in the light most favorable to the state. *See, e.g., State v. Evans*, 161 Or App 86, 89, 983 P2d 1055 (1999). Defendant and the victim had been romantically involved for 16 years. They lived with their two daughters, ages six and 12, and defendant's father. Defendant's father required extensive care, and the victim was his caretaker. Defendant and the victim shared a bedroom. The children had a separate room. Defendant, the victim, and defendant's father each owned cars, but only defendant's father's car was operable and insured.

---

[1] ORS 163.275 provides, as relevant:

"(1) A person commits the crime of coercion when the person compels or induces another person to engage in conduct from which the other person has a legal right to abstain, or to abstain from engaging in conduct in which the other person has a legal right to engage, by means of instilling in the other person a fear that, if the other person refrains from the conduct compelled * * * the actor or another will:

"(a) Unlawfully cause physical injury to some person[.]"

Around 3:00 a.m. one morning, the couple's youngest child burst into defendant and the victim's bedroom crying loudly because she had had a nightmare. The child tried to enter her parents' bed. Defendant became very agitated and told the child to "shut up" or "pay." While the victim was picking up the child to take her out of the room, defendant began punching the child in the head. As the victim carried the child to the children's room, defendant followed, yelling "fight, fight, fight" and hitting them both. Once in the children's room, the victim asked the oldest child to call 9-1-1. As the child did that, defendant told her that, if she called the police that there would be a "gun battle" and tried to grab the phone.

Defendant left the room when the daughter completed the 9-1-1 call. The victim then took defendant's car keys to drive the children to safety in defendant's father's car. As the victim was on her way to the car, defendant told her to give him the keys or he "was going to go get them." The victim interpreted that to mean that defendant would hurt the children unless she gave him the keys, so she gave him the keys. Shortly thereafter, the victim found her keys and drove to safety in the father's car.

Defendant was charged with, among other things, coercion relating to his demand that the victim give him the car keys. Defendant's father testified at trial that the victim had his permission to use his car. Throughout their testimony, both defendant and the victim referred to one set of keys as defendant's keys and another set as the victim's keys. However, the victim also testified that it was her "usual practice" to use defendant's keys.[2]

---

[2] The victim testified:

"A. Yes. Right in the dining room area there, in between the two bedrooms, he started telling me to give him the keys.

"Q. And what was your response?

"A. I told him that he told us to get out, and I needed those keys to get in the car to leave, for his own wishes.

"Q. Were there any—was it a usual practice that you would use those specific keys, that particular key chain to start that car?

"A. Yes."

When the state rested its case, defendant moved for a judgment of acquittal on the coercion charge that alleged that defendant had compelled the victim to give him the keys by threatening to harm their children. Defendant argued that the state had failed to show that the victim had the right to withhold the keys from defendant and, hence, had failed to prove that defendant had compelled the victim to engage in conduct from which the victim had a legal right to abstain, an essential element of coercion. The state responded that there was testimony that the parties in the house all used varying sets of keys and that the victim had defendant's father's permission to use the car at any time. The state reasoned that a jury could find from that evidence that defendant and the victim had an equal right to possess and use the keys to the father's car, and, hence, the victim had the right to refuse to give defendant the keys. The trial court agreed with the state and denied defendant's motion. After the trial court denied defendant's MJOA, defendant testified that the victim did not have to get his permission to use the father's car. The jury found defendant guilty of both counts of coercion, and defendant now appeals.

The parties renew their arguments on the MJOA on appeal. As recited above, defendant's father had given defendant and the victim the right to use his car and the keys by which to do that. Further, the victim testified that it was her customary practice to use defendant's keys whenever she desired, which is consistent with her having an equal interest with defendant in the keys to the father's car. Defendant, in turn, testified that the victim did not need his permission to use the car. Based on that evidence, a reasonable factfinder could find that the victim and defendant had an equal right to use the car and the keys to the car. Hence, the evidence was sufficient to support a finding that defendant had compelled the victim to engage in conduct from which she had a legal right to abstain when he made her give him

---

The victim also testified:

"Q. Okay. And practice has been that either one of you can use any one of the cars?

"A. Yeah. We have always shared.

"Q. Okay. You also share the actual keys if one can't find the keys?

"A. We all have extras on the key chains, yeah."

the keys. Accordingly, the trial court did not err in denying defendant's MJOA.

Affirmed.